**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Ann HAYGOOD, Defendant-Appellant.**

**No. 73–1630.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1974.

Decided Aug. 6, 1974.

Rehearing Denied Sept. 13, 1974.

R. Eugene Pincham, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Michael D. Groark, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

The question presented is whether appellant has impermissibly been twice punished for the same offense in view of

the fact that before she was sentenced in this case this charge had been considered by another sentencing judge.

Appellant was involved in the purchase of drugs from a Detroit source and their subsequent resale to a Chicago outlet. She was indicted twice, once for the Detroit purchases (71 CR 456) and separately for the Chicago sales (71 CR 457). As a result of a plea bargain, the latter charge was dismissed and superseded by a lesser charge (71 CR 1091), to which appellant pleaded guilty. After a presentence investigation which included reference to the Detroit purchases and the charge in this case (No. 456), then pending before Judge Parsons, Judge McMillen imposed a sentence of four years probation in Case No. 1091.

On the following day the parties appeared before Judge Parsons to discuss the possible dismissal of this charge (No. 456); no action was taken on that day and before any formal motion was filed, the case was transferred to Judge McLaren. Apparently after giving some consideration to a voluntary dismissal, the government decided to go forward with this case. Appellant's counsel then moved to dismiss on double jeopardy grounds.

Judge McLaren found as a fact that when Judge McMillen imposed sentence in Case No. 1091, he had relied in part on the charge pending in this case. Judge McLaren held, however, that such reliance by the sentencing judge in another proceeding did not place the appellant in jeopardy and, therefore, this action was not barred. In due course the parties stipulated to the relevant facts, appellant was convicted, and Judge McLaren sentenced appellant to five years imprisonment. She now appeals, contending that she has, in effect, been punished twice for the same offense. See North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656.

Appellant's primary reliance is on the constitutional protection against double jeopardy. She also argues, by analogy to the Wisconsin "read-in" practice,[1] that procedural error was committed which we may use our supervisory power to correct.

## I.

Jeopardy usually does not attach until the jury is impanelled,[2] or at least until the judge before whom a charge is pending considers the evidentiary basis for the charge.[3] When Judge McMillen imposed sentence in Case No. 1091, he clearly did not place appellant in jeopardy in this case. The offense to which appellant pleaded guilty in No. 1091 carried a lesser maximum sentence than this charge. Judge McMillen had no power to find appellant guilty on this charge or to impose the sentence which the law authorizes after a finding of guilt. Judge McLaren was, therefore, correct in holding that jeopardy in this case (No. 456) did not attach when the factual basis for this charge was brought to the attention of Judge McMillen in Case No. 1091.[4]

---

1. See Martinkoski v. State, 51 Wis.2d 237, 186 N.W.2d 302, 308 (1971); Austin v. State, 49 Wis.2d 727, 183 N.W.2d 56 (1971); Embry v. State, 46 Wis.2d 151, 174 N.W.2d 521, 524–525 (1970).

2. See, e. g., McNeal v. Hollowell, 481 F.2d 1145, 1149 (5th Cir. 1973).

3. The present jeopardy aspect of the en banc opinion in United States v. Ponto, 454 F.2d 657 (7th Cir. 1971), would not justify the conclusion that consideration by a judge imposing sentence in a separate case of the factual basis for a charge pending before another judge placed the defendant in jeopardy.

4. If a person has been convicted of a crime, and sentenced for it, jeopardy has clearly attached, so as to bar not only a second prosecution but also a second punishment for the same offense. Ex parte Lange, 85 U.S. (18 Wall) 163, 168, 21 L.Ed. 872; North Carolina v. Pearce, 395 U.S. 711, 718–719, 89 S. Ct. 2072, 23 L.Ed.2d 656. Nevertheless, this rule has never been thought to bar a sentencing judge's reliance upon previous convictions. If a sentencing judge may rely upon a previous offense to which jeopardy has unquestionably attached and for which punishment has been exacted, it would be anomalous to hold that his consideration of a charge to which jeopardy had not other-

■ If anything which happened in Case No. 1091 created a constitutional bar to this proceeding, it must have been the entry of the judgment, predicated in part ·on the judge's conclusion or assumption that there was a factual basis for the charge in No. 456. Quite clearly, however, a sentencing judge's consideration of the biography of a convicted defendant does not confer transactional immunity for every possible misdeed which may have been revealed to the judge. The fact that a particular charge is pending in another court may make it inappropriate for the sentencing judge to inquire into that matter, but if he should attach some minimal significance to it, his exercise of the human faculty of judgment is not the constitutional equivalent of a formal judgment of the court forever barring a proceeding before another tribunal.

■ As a matter of constitutional law, we think the same result must obtain even though the two prosecutions were pending in the same district court —albeit before different judges—and even though they arose out of related transactions. Appellant argues to the contrary, but we think it is perfectly clear that the government had the right to separate the conspiracy charge involving the Detroit purchases (No. 456) from the substantive charge involving a Chicago sale (No. 1091) for purposes of trial and disposition.[5] We therefore hold that the entry of judgment in No. 1091 did not constitute a constitutional bar to this proceeding.

## II.

■ Appellant's claim that procedural error was nevertheless committed is supported by the policies which undergird the constitutional protection against double jeopardy. There is an element of unfairness in allowing the prosecutor to bring an unadmitted and unproven charge to the attention of a sentencing judge; presumably the decision to dismiss or to prosecute that charge will normally depend upon the prosecutor's appraisal of the first punishment as either adequate or inadequate to vindicate the government's interest in disposing of two separate charges. In a practical sense, therefore, the prosecutor has two opportunities to use one charge as a basis for imposing what he regards as an adequate sentence.[6] The constitutional protection is intended to forestall such unfairness and to give a defendant the right to one final disposition of any pending charge.

■ The government argues that this use of one charge in two different proceedings is comparable to the accepted practice of considering prior convictions at the time of sentencing. It is, of course, well settled that such consideration is not the equivalent of multiple punishment for the earlier offense, but rather is a permissible method of determining the degree of punishment that should be imposed for the later offense.[7]

---

wise attached could cause it to do so. See n. 7, *infra*, and accompanying text.

5. Since the two indictments charged separate conspiracies, separate trials would ordinarily result unless the trial court ordered consolidation. The question whether consolidation should be ordered pursuant to Rule 13, Fed. R.Crim.P., is a question addressed to the sound discretion of the trial court. Davis v. United States, 148 F.2d 203, 204 (5th Cir. 1945). In view of the difference in parties and in the factual basis for the charges in the two indictments against appellant, Judge Parsons did not abuse his discretion in refusing to enter such an order when requested to do so in this litigation. The difference between the two cases was accentuated when

the conspiracy charge originally asserted in No. 456 was replaced by the substantive charge in No. 1091; the charge in 1091 is not encompassed within the conspiracy allegations made in this case.

6. In this case there is no suggestion that the prosecutor acted vindictively in proceeding with the second charge in order to discourage appellant from exercising any constitutional right. *Cf.* Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

7. Indeed, "modern concepts of individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent informa-

The analogy is imperfect, however, because the cases rejecting the double punishment argument have involved sentences based, in part, upon prior convictions, not as in this case, a sentence based in part upon a pending charge.[8]

A somewhat closer, though also imperfect, analogy is provided by the Wisconsin read-in practice and by English cases considering the effect of a sentence predicated, in part, upon an uncharged offense. The English courts have held that the plea of *autrefois convict* is unavailable to a defendant simply because the subject matter of a charge was considered by the sentencing judge in another proceeding.[9] Nevertheless, the prevailing practice in England is not to prosecute for an uncharged offense upon which a sentencing judge has relied.[10]

tion by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337. Previous criminal activity, which is not logically relevant to a trial, is surely among that information relevant to sentencing. "The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it. . . . [F]ew things could be so relevant as other criminal activity of the defendant, particularly activity closely related to the crime at hand." United States v. Doyle, 348 F.2d 715, 721 (2d Cir. 1965) (Friendly, J.). See United States v. Trigg, 392 F.2d 860, 864 (7th Cir. 1968).

8. In the Approved Draft, 1970, of Standards Relating to Probation, the American Bar Association Advisory Committee on Sentencing and Review recommended that the presentence report should include "(B) a full description of any prior criminal record of the offender." At 34. The Advisory Committee carefully limits this recommendation to charges "which have resulted in a conviction." At page 37 of its commentary about the content of presentence reports, the Committee stated:

"A word should also be added in explanation of what is meant by 'prior criminal record' in subsection (ii) (B). By this the Advisory Committee' means to include only those charges which have resulted in a conviction. Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report which deals with past convictions. If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction."

9. The English Court of Criminal Appeal in R. v. Nicholson, [1947] 2 All E.R. 535, doubted the result in R. v. McMinn in which a judge at the Northamptonshire Assizes had applied the doctrine of *autrefois convict* on facts similar to those before us. Singleton, J., delivering the judgment of the court, said:

"Sentence is passed on the count or counts on which there has been a conviction and no matter how many offenses are taken into consideration, the sentence cannot exceed that proscribed by law for the offense charged in the indictment and on which there has been a conviction. There is no conviction on the outstanding cases, nor is there any separate sentence on them." 2 All E.R. at 536.

10. A note in the Law Quarterly Review, appearing before R. v. Nicholson, but also questioning the result in R. v. McMinn, see note 9, *supra*, pointed out that unfairness was not likely to result simply because the technical plea of *autrefois convict* was unavailable:

"The suggestion may be made that it would be unjust that a prisoner should be in danger of further punishment for an offence which he has previously admitted, and the admission of which may have led to a heavier punishment than he would have received if he had not asked for the offence to be taken into consideration. It may also be suggested that it would be inexpedient, since the knowledge of liability to further proceedings might make prisoners less ready to take advantage of the practice of admitting other offences; with the result that the Crown would be put to the trouble and expense of further trials, while the prisoner himself would lose the advantage of starting with a clean sheet after he had served the one, inclusive, sentence.

"To these practical arguments of injustice and inexpediency there are at least two practical answers. First there would not in fact be further trials for offences already taken into consideration, except in cases such as R. v. McMinn, where the further trial was desirable in the interests of justice. Those who are charged with instituting prosecutions have a discretion which they are under a duty to exercise properly and fairly. There is no reason to suppose that they will exercise that

The English practice is comparable to Wisconsin's "read-in" procedure. In Wisconsin the prosecutor and the accused may make an enforceable agreement pursuant to which the sentencing judge may take uncharged offenses into account on condition that prosecution of those uncharged offenses be waived.[11] We assume that there is no reason why such a practice might not be followed in the federal courts.[12]

In this case, the terms of the agreement between the prosecutor and appellant which led to the entry of the guilty plea in Case No. 1091 are not before us.[13] Appellant does not claim, however, that the government expressly agreed to dismiss this case either in exchange for the plea in No. 1091 or in exchange for waiving any objection that appellant might have raised to the consideration of this charge by the sentencing judge in No. 1091. Accordingly, even if this prosecution might have been barred by an agreement made in connection with the disposition of the other charge,[14] this record does not support an argument predicated upon an analogy to the Wisconsin practice.

Necessarily, therefore, appellant must contend that when the sentencing judge in No. 1091 gave consideration to the charge in this case—and to the factual basis for the charge—he committed an error of such magnitude that it should be remedied by barring this prosecution. We assume that there are situations in which a defendant might validly object to consideration of unproved charges as a basis for sentencing.[15] Nevertheless, it is clear that there is no flat prohibition against such consideration.[16] We therefore need

discretion so as to lead to injustice. Secondly, if the prisoner were to be tried for any reason for an offence which had previously been taken into consideration, the fact would unquestionably be brought to the notice of the Court; and the Court would, no doubt, take that fact into consideration. . . . On the whole, there seems to be no reason to fear that if R. v. McMinn should be held not to be good law, any injustice would result or any diminution take place in the number of cases in which the Criminal Courts are asked to take other offences into consideration."
J. Megaw, Note, Autrefois Convict, 62 Law Q.Rev. 330, 333.
This comment supports the statement made by Chief Justice Hallows in Austin v. State, supra n. 1, 183 N.W.2d at 59, that the English practice is not to prosecute in cases like R. v. Nicholson, roughly analogous to those treated under the Wisconsin read-in procedure.

11. See note 1, supra.

12. The Wisconsin practice is not unlike Model Penal Code, § 7.05(4):
(4) When the defendant has asked that other crimes admitted in open court be taken into account when he is sentenced and the Court has not rejected such request, the sentence shall bar the prosecution or conviction of the defendant in this State for any such admitted crime.

13. More complete disclosure will be necessary in the future. See Moody v. United States, 497 F.2d 359 (7th Cir. 1974).

14. Cf. Santobello v. New York, 404 U.S. 257, 262–263, 92 S.Ct. 495, 30 L.Ed.2d 427.

15. For example, a defendant might have a valid objection to the consideration by a sentencing judge of a charge pending in another court on the ground that defendant is entitled to a presumption of innocence of that charge unless the facts are examined and that a fair examination of the facts may prejudice his defense to the pending charge. No such objection was made to the procedure followed in Case No. 1091.

16. Indeed, in the Organized Crime Control Act of 1970, Congress expressly provided:
"§ 3577. Use of information for sentencing
"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."
84 Stat. 951, 18 U.S.C. § 3577.
This section was enacted to authorize district judges to rely upon the kind of information considered by the sentencing judge in Williams v. New York, 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L.Ed. 1337. See H.R.Rep.No. 91–1549, 91st Cong., 2d Sess., 2 U.S.Code Cong. & Admin.News, pp. 4007, 4040 (1970). In that case the judge had relied upon alleged criminal activity for which the defendants had not been prosecuted. In United States v. Sweig, 454 F.2d 181, 184 (2d Cir. 1972), the Court of Appeals upheld reliance

not decide whether Judge McMillen would have erred if, in the face of an objection by appellant, he had considered the facts underlying a charge pending against her; for clearly she made no such objection.[17] Without such an objection, the judge was entitled to consider as much information concerning appellant's background as he could.[18] Nor need we decide whether such an error might bar a second prosecution or would only be subject to correction on direct appeal. In this case we need only hold that, since no such objection was made, it was not fundamentally unfair for the government to proceed with the second charge.

We therefore conclude that the record does not support a claim that error was committed either in this case or at the time of sentencing in No. 1091. Accordingly, notwithstanding our concern that the practice of relying upon pending charges as a basis for the sentence determination contains a potential for unfairness, the judgment is

Affirmed.

upon charges of which the defendant had been acquitted, saying that "Acquittal does not have the effect of conclusively establishing the untruth of all the evidence introduced against the defendant." If a sentencing judge does not know that a prior conviction was obtained unconstitutionally, it is error for him to rely on such a conviction, United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592—but if he is fully informed, presumably even the *Tucker* holding would not preclude reliance on the underlying facts. See also United States v. Atkins, 480 F.2d 1223, 1224 (9th Cir. 1973). Two circuits have disagreed on the question whether evidence obtained unconstitutionally may be relied upon. Compare Verdugo v. United States, 402 F.2d 599, 610–612 (9th Cir. 1968), holding such reliance unacceptable, with United States v. Schipani, 435 F.2d 26 (2d Cir. 1970).

17. As appellant candidly states in her brief, "In reality, the Defendants had one of two alternatives in the situation presented at the sentencing by Judge McMillen. They could have denied by evidence, their commission of the No. 456 Ramsey narcotics acquisition offense, and the recitation thereof to Judge McMillen by the Assistant United States Attorney and the presentence and probation report, and thereby possibly precluded Judge McMillen's reliance thereon in determining sentence for the 457 and 1091 offenses. On the other hand, they could have non-contested and admitted their commission of the 456 offense and thereby allow Judge McMillen to consider and rely thereon in imposing sentence in the aforesaid cases before him. The latter alternative was followed." Brief for appellant at 15–16. In deciding to follow the latter alternative, it is not unlikely that appellant and her counsel were hopeful that the sentence which Judge McMillen would impose would lead the government to decide to dismiss this case. It is possible that the government's decision to proceed with this prosecution was predicated upon the fact that the sentence imposed by Judge McMillen was less severe than either party anticipated.

18. See n. 16, supra.