John Leonard SMITH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 76–1897.

United States Court of Appeals,
Tenth Circuit.

Submitted Feb. 14, 1977.

Decided March 30, 1977.

Kenn Bradley, Tulsa, Okl., for appellant.

Nathan G. Graham, U. S. Atty., and Ben F. Baker, Asst. U. S. Atty., for appellee.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

John Leonard Smith appeals from the trial court's judgment and sentence following his guilty plea to an indictment charging that on or about March 17, 1976, he knowingly and intentionally distributed a Schedule II controlled substance (cocaine) in violation of 21 U.S.C.A. § 841(a)(1). Smith had previously pled not guilty, but on the day set for his trial he changed the plea to guilty. The court sentenced him to two and one-half years imprisonment, with eligibility of parole as provided in 18 U.S.C.A. § 4208(b)(2), to be followed with a special parole term of four years following service of the sentence.

When Smith changed his plea on July 19, 1976, the trial court conducted a full, complete and exemplary plea proceeding. Fed. R.Cr.Proc. rule 11, 18 U.S.C.A.; *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). At the conclusion of the proceeding, the court accepted the plea of guilty and found Smith guilty as charged. The court then referred Smith to the probation office for a probation presentence report. The sentencing date was set for August 20, 1976. Smith was requested to cooperate with the probation office " . . . to see that anything that the Court should have is in that report so it can be understood and studied and appreciated before sentence

. . . your counsel . . . will work with you, if you desire him to do so, with the probation office in the preparation of the presentence report." [R., Vol. II, p. 18.]

On August 20, 1976, the defendant appeared in open court with his counsel for the sentencing proceedings. The court specifically addressed Smith and his counsel as to whether they had, respectively, the opportunity "to examine, review, read and study" the presentence report. Both acknowledged that they had. [R., Vol. III, p. 3.] When the court inquired as to whether the presentence report was correct, Smith responded "Pretty much so, the best I can recall" and his counsel responded "Yes, Your Honor." [R., Vol. III, p. 3.] The court then heard mitigating arguments as presented by Smith's counsel, who stated that he had known Smith for about eight or nine years and had represented Smith "previous to this, as is indicated by the presentence investigation, in those matters that were dismissed and one was on acquittal." [R., Vol. III, p. 4.] When the court inquired of Smith if he wished to say anything in his behalf in mitigation of punishment, Smith simply stated that he was then employed, enjoyed his work and would like to pursue the challenge of the job. [R., Vol. III, p. 4.] The court then remarked about the seriousness of the offense and observed that Smith, in the instant case, was dealing in pretty big money in view of Smith's statement to a Government agent (gleaned from the presentence report) that Smith was paying some $2,700.00 per ounce for pure cocaine. Thereupon, Smith stated to the court that he did not make such a statement. He stated that he had simply stated that $2,700.00 per ounce was what pure cocaine would cost. When Smith's attorney inquired why Smith had not pointed out the "incorrect statement" aforesaid contained in the report, Smith stated that he had "just glanced over that paper, just before court." [R., Vol. III, p. 5.] The court then stopped the proceedings and advised Smith to read the presentence report "in depth and in detail." [R., Vol. III, p. 5.] After Smith had read the report carefully, the

proceedings were reconvened. Counsel for Smith then advised the court that he did not make the remarks attributed to him in the report, and that the figure represented simply the price Smith believed pure cocaine would sell for. In addition, counsel for Smith brought to the attention of the court two other matters related in the report which he found to be incorrect. In both instances, Smith and his counsel advised the court of that which Smith had said or attempted to convey in lieu of the language set forth in the report. In addition, Smith's counsel observed that he believed that the presentence report " . . is a little bit weighted against the defendant's personal life" which he proceeded to explain. [R., Vol. III, p. 10.]

The court asked Smith several questions relative to matters contained in the report, during which Smith acknowledged that he had advised the Government's special agent (undercover) that he (Smith) could produce samples of cocaine and that he had four grams of cocaine on hand. Thereupon, the court stated:

> Well, the Court recognizes that in the preparation of reports that statements can be made and can be interpreted. The very reason that the Court asks that the defendant and his counsel read completely and fully the report. . . .
>
> The *Court accepts the statement[s] that the defendant makes and views the report in the light of those statements.* But the Court is left with the full understanding that nonetheless there was a distribution by the defendant of hard narcotic cocaine. . . . The use of itself is bad enough, but the distribution of it is but an impetus to the use of it by all people. . . .
>
> [R., Vol. III, pp. 12, 13.]

Soon after the court entered sentence, Smith filed a motion to arrest judgment and imposition of sentence, wherein he contended that " . . . the presentence investigation report contained such sufficient inaccuracies as to the acts committed by the defendant and the circumstances surrounding the sale which ˙when accompanied

therewith by the arrest record also being included in the presentence investigation destroyed the defendant's possibility of a probationary or suspended sentence <u>and that without such inaccuracies the court's determination as to sentence could have been altered and the term of sentence mitigated or suspended.</u> [R., Vol. I, p. 7.] [Underlining supplied.] This motion was thereafter argued. Even though counsel for Smith recognized that the court did not consider Smith's arrest record and the inaccuracies contained in the report, he still contended that if they had been "withdrawn or removed" that "the Court perhaps would have varied or changed its sentencing." [R., Vol. III, p. 18.] The court carefully reviewed all of the matters relating to the report and concluded, in denying the motion, " . . . that the very items you now raise in your motions were fully and completely explained and discussed prior to any sentence being pronounced." [R., Vol. III, p. 20.]

On appeal, Smith raises two contentions in support of his motion to set aside the judgment: (1) that the presentence investigation report contained history of previous arrests which was prejudicial to the extent that it constituted manifest injustice for it to be included, and (2) that the presentence investigation report should be submitted to the defendant and his attorney prior to the reading of same by the court so that errors and misstatements can be corrected or deleted so as not to leave any doubt about its influencing the court's decision.

Smith's brief on appeal frankly acknowledges that "the case law is in direct opposition to defendant's position and he can present this court with no absolute authority to support it other than a realistic practical one." [Brief of Appellant, p. 9.]

I.

■ Smith contends that because the presentence report contained history of previous arrests, same was prejudicial to the extent that it constituted manifest injustice to have been included. The contention is without merit.

Fed.Rules Cr.Proc. rule 32(c)(2), 18 U.S. C.A., provides:

> The report of the presentence investigation shall contain <u>any prior criminal record</u> of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court. [Underlining supplied.]

Further, we deem it most significant that the Congress has not in anywise seen fit to repeal or amend 18 U.S.C.A. § 3577, enacted in 1970 [Pub.L. 91–452, Title X, § 1001(a), Oct. 15, 1970, 84 Stat. 951] which provides:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

■ The above statute was interpreted by the Supreme Court in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). The court held that as a general rule, a federal district judge may, before sentencing, " . . . conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." 404 U.S. at 446, 92 S.Ct. at 591. The court did, of course, recognize one well-defined limitation to the rule, i. e., use or consideration of convictions obtained when the defendant was not afforded the benefit of counsel. On the other hand, this statute was enacted in order to clearly authorize the trial judge to rely upon information of alleged criminal activity for which the defendant had not been prosecuted, which was justification for the broad scope of inquiry now authorized under § 3577, *supra*:

> . . . A sentencing judge . . . is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. . . .

*Williams v. People of The State of New York*, 337 U.S. 241, at 247, 69 S.Ct. 1079 at 1083, 93 L.Ed. 1760.

## II.

■ Smith contends that the presentence investigation report should be submitted to the defendant and his attorney prior to the reading of same by the court so as not to leave any doubt about its influencing the court's decision. We hold that the trial judge did not err in his handling of the presentence and sentencing proceedings.

Fed.Rules Cr.Proc. 32(c)(3)(A), 18 U.S. C.A., provides that before imposing sentence the court shall, upon request, permit the defendant, or his counsel if he is so represented, to read the report exclusive of any recommendation as to sentence or matters involving diagnostic opinions, confidential information, or other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons. Significantly, this proviso also directs the court to " . . . afford the defendant or his counsel an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report."

We first observe that prior to the 1975 amendment, we held that it was permissive on the part of the trial court to determine whether to disclose the contents of a presentence report to the defendant. *United States v. Gardner*, 480 F.2d 929 (10th Cir. 1973); *cert. denied*, 414 U.S. 977, 94 S.Ct. 297, 38 L.Ed.2d 220 (1973); *United States v. Stidham*, 459 F.2d 297 (10th Cir. 1972), *cert. denied*, 409 U.S. 868, 93 S.Ct. 168, 34 L.Ed.2d 118 (1972). Since the 1975 amendment, the procedure employed by the district court in the instant case is mandated.

As amended in 1975, Rule 32, *supra*, requires a presentence report unless, with the permission of the court, the defendant waives the presentence investigation, or the court finds that there is in the record information sufficient to enable a meaningful exercise of sentencing discretion, and this finding is contained in the record. Fed. Rules Cr.Proc. rule 32(c)(1), 18 U.S.C.A.

It is most relevant that we consider the legislative history behind the 1975 amendments. In *Gregg v. United States*, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), rehearing denied, 395 U.S. 917, 89 S.Ct. 1738, 23 L.Ed.2d 232 (1969), the court held that there was no requirement for disclosure of the presentence report to the defendant. Commencing in 1944, the Advisory Committee recommended disclosure to the defendant. *See*: Wright, Federal Practice and Procedure, Criminal, § 524; 8A Moore's Federal Practice—Criminal Rules § 32.02[4]. The purpose behind the adoption of the 1975 amendments is stated by the Advisory Committee as follows:

> The Advisory Committee is of the view that accuracy of sentencing information is important not only to the defendant but also to effective correctional treatment of a convicted offender. The best way of insuring accuracy is disclosure with an opportunity for the defendant and counsel to point out to the court information thought by the defense to be inaccurate, incomplete, or otherwise misleading. Experience in jurisdictions which require disclosure does not lend support to the argument that disclosure will result in less complete presentence reports or the argument that sentencing procedures will become unnecessarily protracted. It is not intended that the probation officer would be subjected to any rigorous examination by defense counsel, or that he will even be sworn to testify. The proceedings may be very informal in nature unless the court orders a full hearing.

62 F.R.D., at 325.

We hold that the trial court in the instant case meticulously and carefully abided with each, all and every command contained in the aforesaid 1975 amendments.

Smith was accorded all statutory and/or rule-made rights and consideration. It is difficult to believe that more could have been done to protect one convicted from suffering a sentence imposed based upon false or incorrect presentence information relied upon by the court.

WE AFFIRM.