**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Karel PLISEK, Defendant-Appellant.**

**No. 80–1293.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1980.

Decided Aug. 17, 1981.

---

Chester L. Blair, Chartered, Chicago, Ill., for defendant-appellant.

James L. Sanders, Asst. U. S. Atty., Robert W. Tarun, Deputy Chief, Crim. Receiving and Appellate Div., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and PELL, Circuit Judge.

PELL, Circuit Judge.

The defendant-appellant, Karel Plisek, appeals from a judgment which imposed a sentence of imprisonment of four years with mandatory special parole of four years to follow. The sentence followed a plea of guilty to one count of importing cocaine into the United States in violation of 21 U.S.C. § 952(a). The maximum penalty for a conviction is a term of imprisonment of fifteen years, a fine of $25,000, and a special parole term of not less than three years. Plisek does not challenge his conviction, but rather only the claimed severity of his sentence.

I. *Introduction.*

On October 21, 1979, the defendant was arrested at the O'Hare Airport International Terminal as he debarked from a flight from the Netherlands, when a search of the defendant's clothing during customs processing revealed that he was carrying approximately eight ounces (200.26 grams) of cocaine. The Drug Enforcement Agency (DEA) tested the drug and found that it was approximately eighty percent pure. The DEA estimated that the value of that amount of such high purity cocaine was approximately $32,000, and that the street value would be considerably higher as it would be diluted before sale or use.

On November 20, 1979, a two count indictment was returned against the defendant. Count one charged him with knowingly and intentionally importing 200.26 grams of cocaine into the United States in violation of 21 U.S.C. § 952(a). Count two charged him with possessing, with intent to distribute, approximately 200.26 grams of cocaine in violation of 21 U.S.C. § 841(a)(1).

On November 27, 1979, Plisek pleaded not guilty to both counts. Sometime thereafter the attorney for the Government and defense counsel reached a plea agreement whereby the defendant agreed to plead guilty to both counts of the indictment, and the Government agreed to recommend incarceration without specifying any particular period of time, and to limit its statement in aggravation to pointing out a 1971 misdemeanor conviction.

On January 21, 1980, the defendant appeared before the trial court and entered a plea of guilty to count one of the indictment. The defendant then attempted to plead guilty to count two of the indictment, at which time in a colloquy with the judge, the defendant denied he had any intention of distributing the cocaine, which he was going to keep for himself. The trial court then determined that there was an insufficient factual basis for a guilty plea, and decided to proceed as if count two would be dismissed.

On February 25, 1980, the defendant appeared for sentencing on count one of the indictment. The trial court turned a copy of the presentence report over to defense counsel, and afforded him an opportunity to review it with the defendant. The court then asked the defense counsel, "Do you see anything in the presentence report that you find inaccurate or that you want to elaborate on?" The defendant's attorney questioned an allegation that his client had traveled to Peru but stated that, "[o]ther than that it seems to be—the facts seem to be accurate."

The court then asked the Government for its statement. The Government made brief remarks noting (1) the high degree of puri-

ty of the drug as giving rise to a reasonable inference that it was not intended for personal consumption; and (2) "the documentation of Mr. Plisek's prior record, both arrests and convictions."

The defense then introduced testimony and argument in mitigation, claiming that the defendant's drug use was induced by the stress caused by his involvement in a prior trial in which he was accused of murder and acquitted by a jury on a plea of self-defense. The Government responded that none of the defense character witnesses were aware of the defendant's alleged use of cocaine to alleviate stress, and that the defendant's story—that he purchased the cocaine with money he had planned to use to purchase antiques in Amsterdam—was inconsistent with the defendant's financial background and self-proclaimed "frugal lifestyle." The Government concluded by recommending incarceration.

The trial court then conducted a wide-ranging review of the presentence report, commenting on matters he found pertinent, and allowing defense counsel to respond to each item considered. The court first noted that the Government considered the plea agreement to have been breached by the defendant's refusal to plead to the facts underlying count two of the indictment, which had caused the court to reject that plea. The Government stated that had the defendant complied it would have rested on the presentence report and made no recommendations, but in the circumstances was recommending incarceration although not specifying any particular time.

The trial court then noted several factors, particularly (1) the serious nature of the offense; (2) the defendant's difficulties with the Immigration and Naturalization Service; (3) the defendant's special status as a grantee of political asylum in this country; (4) the defendant's two recent misdemeanor convictions for shoplifting; and, (5) the circumstances of the defendant's arrest and acquittal on the prior homicide charge. Defense counsel had full opportunity to respond to the court's concerns in each of those areas, and attempted to explain the defendant's involvement in each of the prior offenses. At no time did defense counsel object to the accuracy of the information which the court considered in the report. The court then sentenced the defendant to five years incarceration and four years mandatory special parole. Defense counsel made further arguments in mitigation, emphasizing the defendant's reliance on the failed plea agreement. The trial court reconsidered the sentence in light of those arguments and the presentence report's indication that the average prison sentence for this offense was just under four years. The court therefore reduced the five year period of incarceration to four years. The Government then moved to dismiss count two and the trial court granted that motion.

The defendant appeals from the sentence imposed by the district court contending that the court abused its discretion by placing undue emphasis on the arguments of the Government while placing little weight on the defendant's reliance on the plea agreement. The defendant also contends that the court erred by first "misinterpreting" the presentence report, and then by giving improper weight to certain matters contained in the report. Finally, the defendant claims the sentence was simply too harsh in light of sentencing statistics, the nature of the drug involved, and the defendant's good character.

II. *The District Court Did Not Abuse Its Discretion By Considering The Government's Argument In Aggravation In Sentencing The Defendant.*

The defendant contends that the trial court abused its discretion by "placing a heavy emphasis on the arguments of the government while placing little weight on the reliance of the Defendant on the government's prior agreement not to present such arguments." The defendant argues that the terms of a plea agreement limited the Government's right to make such argument, and that the court erred by hearing and giving credence to the Government's statements.

We note preliminarily that it is quite clear from the record that the defendant voided the plea agreement by failing to comply with its terms, which required that he plead guilty to both counts of the indictment. The defendant contends that he attempted to do so, but that the trial court, by refusing to accept his guilty plea to count two of the indictment, forced him to abrogate the agreement. We do not find this reasoning persuasive. It is incumbent upon the trial court, under Rule 11(f) of the Federal Rules of Criminal Procedure, to determine whether there is a factual basis for a guilty plea before entering judgment. It is well settled in this circuit that the failure of the defendant to admit to the factual basis of a plea is the equivalent of a plea of not guilty, and that "a district judge shall not *accept* a guilty plea until he has determined that there is a factual basis for the plea." *United States v. Wetterlin*, 583 F.2d 346, 352–53 (7th Cir. 1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979) (emphasis in original). It is disingenuous of the defendant to contend in these circumstances that he relied on the Government to continue to comply with the terms of the plea agreement which the defendant himself had breached. We therefore find no abuse of the trial court's discretion in hearing the Government's argument in aggravation. The defendant's contention that the trial court improperly "weighed" the Government's arguments is similarly without merit.

As this court recently noted in *United States v. Hedman*, 630 F.2d 1184, 1201 (7th Cir. 1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981), "[t]he sentencing function has traditionally been considered to be within the exclusive province of the trial court, and the exercise of that discretion 'will not be disturbed on appeal except on a plain showing of gross abuse.' *United States v. Willard*, 445 F.2d 814, 816 (7th Cir. 1971) (citations omitted)." An examination of the brief remarks in aggravation the Government offered, and the trial court's response to those remarks, fails to reveal any such abuse.

The only statements by the Government noted (1) the large amount and high degree of purity of the drug; (2) the defendant's prior record as revealed in the presentence report, without mentioning the details or even the number of prior arrests and convictions; and (3) that the defendant's statements in mitigation were implausible. The Government's recommendation of incarceration without specifying any period of time was precisely that envisioned by the plea agreement. The defendant has not alleged that consideration of any of these matters was improper absent the existence of a plea agreement, and under the standards of *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and its progeny, we find that consideration of these matters is well within the proper bounds of the trial court's sentencing determination.

Furthermore, even a casual reading of the transcript of the sentencing proceeding makes it clear that the contents of the presentence report were the predominant factors influencing the trial court's sentencing decision, and that the impact of the Government's statements was minimal. We therefore find no abuse of discretion in the trial court's consideration of the Government's arguments in aggravation.

III. *The Trial Court Did Not Err In Its Consideration Of The Presentence Report.*

A. *The Defendant Waived Any Challenge to the Factual Accuracy of the Presentence Report.*

The defendant also claims that the district court "misinterpreted" the presentence report by believing that the defendant had been arrested and convicted on two separate misdemeanor charges in 1979, and in believing that the defendant had been found in violation of the United States immigration laws.

As to the 1979 misdemeanor convictions, the defendant now contends that he was only convicted of one misdemeanor, but that somehow it was erroneously entered twice on the defendant's "criminal history sheet," a document which was not part of the record before this court or the trial court. Defense counsel did not point out

this alleged error at sentencing, despite the fact that he and the defendant had an adequate time to review the report, were asked if it was accurate, and in fact attested to the fact that it was accurate. In *United States v. Leonard*, 589 F.2d 470 (9th Cir. 1979), a challenge to the accuracy of a presentence report was made in similar circumstances. In a thorough analysis, the Ninth Circuit concluded that the purpose of Federal Rule of Criminal Procedure 32(c)(3), which requires disclosure of the report with an opportunity to point out inaccuracies, was precisely to avoid what the appellant here now seeks. That court concluded that, "a full opportunity [was] afforded the defendant and his counsel to intelligently dispute the accuracy of [the] presentence report. . . . To grant appellant's request for an evidentiary hearing at this late date, would reopen all sentences for indefinite periods. We decline to do so." We agree.

In an apparent attempt to avoid the holding of *Leonard*, the defendant contends he does not allege inaccuracies in the report, but rather challenges only the trial court's interpretation of the report. This attempted semantic distinction cannot disguise the nature of appellant's argument, which is that the presentence report said that there were two convictions while the defendant says that documents outside the record indicate that there was only one. The defendant had a full and fair opportunity to comment on the presentence report's discussion of the 1979 convictions at sentencing. He failed to do so, and has thereby waived any objection to the accuracy of the report. *Leonard*, 589 F.2d at 472. We therefore must decline to review the circumstances surrounding the 1979 misdemeanor convictions. If we were to do so, however, our reading of the presentence report, which

was made part of the record in this court *in camera*, supports the reading of the trial court.

The defendant also contends that the trial court "erroneously considered [the defendant] to be in violation of the Immigration laws at the time of sentencing." This contention is without foundation in the record. The trial court noted in reviewing the presentence report, "[the defendant] has had some difficulty with the Immigration and Naturalization authorities. *He is here, I think, now legally,* but that is because of special dispensation that he got. . . ." (Emphasis added.) This statement makes it clear that the trial court was aware of the defendant's actual immigration status, but did not believe he was in this country illegally. Furthermore, defense counsel had full opportunity to explain the nature of the defendant's immigration "difficulty," and, indeed, does not contend that consideration of such problems is outside the broad scope of judicial consideration in determining sentence length. We therefore find no merit in the defendant's assignment of error in regard to the trial court's understanding of his immigration status.

**B.** *The Trial Court Did Not Give Improper Weight to Matters Contained in the Presentence Report.*

The defendant's next contention is that the trial court gave improper weight to two matters contained in the presentence report: (1) the defendant's 1975 arrest and acquittal on a homicide charge; and (2) a 1979 misdemeanor conviction in which the defendant had been placed on supervision. Before examining each of the defendant's claims, we turn to the general principles governing the information a sentencing court may properly consider.[1]

---

1. The defendant also asserts his "belief" that "he was put to trial in [a 1971 misdemeanor conviction which resulted only in a fine] without the benefit of counsel," and that the trial court erred in considering this improperly obtained conviction. We note that there is no evidence in the hearing transcript that the judge relied on this conviction. Even if he had, however, the record before this court contains

no factual predicate, other than the defendant's bald assertion of belief, that the defendant was uncounseled in that prior case. We need not address, therefore, the issue left open by *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) (per curiam; 4–1–4 decision) whether uncounseled convictions which are in themselves valid under *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383

18 U.S.C. § 3577 (1976) provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *See* Fed.R.Crim.P. 32(c)(2). The broad scope granted by § 3577 has been held to authorize trial judges to rely on a wide range of information, including, for example, alleged criminal activity for which the defendant has not been prosecuted, *Smith v. United States*, 551 F.2d 1193, 1195–96 (10th Cir. 1977), *cert. denied*, 434 U.S. 830, 98 S.Ct. 113, 54 L.Ed.2d 90, illegally obtained evidence, *United States v. Lee*, 540 F.2d 1205, 1211–12 (4th Cir. 1976), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177, and hearsay evidence, *United States v. Garcia*, 544 F.2d 681, 684 (3d Cir. 1976). There are two recognized due process limitations, however, on the degree to which the trial court can rely on convictions obtained without the benefit of counsel, *see, e. g., United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (error to consider unconstitutionally obtained prior felony conviction), or on information which is inaccurate, *Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948) (error to base sentencing determination on misinformation submitted by prosecution when uncounseled defendant had no opportunity to prevent court from being misled); *but cf. United States v. Leonard*, *supra* (failure to challenge accuracy of presentence report waives error). Applying these principles to the facts of the instant case, we find that none of the appellant's contentions warrant reversal by this court.

■ 1. The Court Did Not Give Improper Consideration to a Prior Homicide Charge of which the Defendant was Acquitted.

The defendant contends that the trial judge abused his discretion by improperly referring to information in the presentence report concerning the defendant's arrest and acquittal on a 1975 murder charge. The presentence report revealed that the defendant had been arrested for the murder of the former husband of the woman with whom the defendant was then living. The report detailed the circumstances leading up to the charge, including that the victim and the defendant had a history of fights, and that the fatal incident occurred when the victim became "abusive and threatening" and attacked the defendant when returning his young son after visitation. The presentence report is clear that the defendant was acquitted of the murder charge.

In the course of his oral, in-court review of the presentence report, the trial judge made reference to the report's discussion of the murder charge, as he had with each prior offense, giving defense counsel full opportunity to elaborate upon or explain the report.[2] The defendant contends that

---

(1979), may be used to guide sentencing discretion within the statutory maximum in a subsequent conviction. *See Baldasar*, 446 U.S. at 235, 100 S.Ct. at 1591–1592 (dissenting opinion) (Powell, J.).

**2.** The court's challenged remarks were as follows:

The Court: I think because of the severity of the offense and for various other reasons, I will have to agree with the government, Mr. Blair. I do not believe that this is a case where straight probation would be justified in view of the prior difficulties the defendant has been in, as you are aware from the presentence report. They haven't been serious offenses except for the death charge which he was acquitted of, but, nevertheless, the individual victim died. And the other offenses indicate that he has some lack of moral fiber because when he gets in difficulties he commits some kind of crime or maybe a misdemeanor.

The Court: Well, he has two other misdemeanor offenses of relatively recent origin, one in North Riverside—both in North Riverside. Even though you were able to successfully defend him in the murder charge, the fact that a person even gets into that situation, I think, is some evidence that he has some instability if not some proclivity to commit crimes.

I, of course, can't say that merely being indicted for a crime is a reason for putting someone in jail for some other crime.

Mr. Blair: Yes, sir.

The Court: But there are many ways to solve these domestic problems other than by killing the person that is pursuing the person you are living with.

Mr. Blair: Except in one instance, your Honor.

this colloquy reveals the degree to which the trial judge was influenced by the 1975 charge, and that the judge improperly based the length of the sentence not upon the severity of the crime of which the defendant had been convicted, but rather upon other activities of which the defendant had, in fact, been exonerated of blame.

■ As we noted above, the scope of a sentencing judge's discretion is wide, and in making the sentencing determination, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). While it has been suggested that consideration of mere arrests or pending charges be prohibited in reaching the sentencing determination, *United States v. Johnson*, 507 F.2d 826, 832 (7th Cir. 1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975) (concurring and dissenting opinion) (Swygert, C. J.), the legislature has chosen to permit a far broader inquiry into "the background, character and conduct" of a convicted defendant, 18 U.S.C. § 3577 (1976). A broad interpretation of this language finds support in the legislative history of § 3577, which makes it clear that the section was intended to "maximize sources of sentencing information, [and] to guard against the unnecessary formalization of sentencing procedures." S.Rep.No. 91–617, 91st Cong., 1st Sess. 90 (1969), *quoted in United States v. Williamson*, 567 F.2d 610, 615 (4th Cir. 1977). This legislative mandate reflects the sentencing philosophy articulated by the Supreme Court in *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), in which it was stated:

> A sentencing judge . . . is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.

*Id.* at 247, 69 S.Ct. at 1083 (footnote omitted). It is clear that the *Williams* court intended that full knowledge of the defendant's entire background should be available to the sentencing court: "of course in the smaller communities sentencing judges naturally have in mind their knowledge of the personalities and backgrounds of convicted offenders." *Id.* at 246, 69 S.Ct. at 1082. We believe that under this broad grant of sentencing discretion the trial court did not err in referring to information in the presentence report concerning the circumstances surrounding a prior acquittal, particularly in view of the wide latitude of response to the information permitted to the defendant.

Furthermore, additional comments of the court make it clear that he did not impose or enhance the sentence on the basis of his evaluation of the merits of the prior acquittal. For example he remarked, "I, of.

---

The Court: Pardon me?

Mr. Blair: Except in one instance and that is the instance that was involved here, self-defense.

The Court: Are you talking about self-defense?

Mr. Blair: Loss of your own life. I believe the courts and the law provide that you should be given the right to defend until death if you are threatened.

The Court: Right. And obviously you were able to persuade a jury or a judge that that was the defense.

Mr. Blair: I don't think there is a dispute about the facts, Judge.

The Court: Well, I am not thoroughly satisfied that that is complete exoneration when a person is stabbed repeatedly about the face and body during a fight. Maybe it is. I can't try that case. He was found not guilty. I really can't go into the merits of it.

Mr. Blair: Yes, sir.

The Court: I will have to say, in all honesty, that that together with the two offenses in Riverside and the fact that I think he is here under—well, because he has political asylum, which is a grant of special status, makes it difficult to excuse the crime that he has committed.

So, I am going to sentence you, Mr. Plisek, to a period of 5 years in the federal penitentiary and impose a period of 4 years' mandatory special parole following that, . . .

course, can't say that merely being indicted for a crime is a reason for putting someone in jail for some other crime," and later, "I can't try that [the murder] case. He was found not guilty. I really can't go into the merits of it." These remarks clarify the context in which the allegedly improper concerns were voiced: they reveal that the judge did no more than examine and evaluate the presentence report and afford counsel a full opportunity to respond to any prejudicial inferences which might have been drawn from that section of the report. Examination of the transcript of the sentencing proceeding reveals that the court had considered the circumstances surrounding the 1979 misdemeanor convictions, and similarly probed into the details of the defendant's immigration status, and that the sentence was based on the judge's assessment of the appropriate sentence for the defendant in the light of the total mix of information in the presentence report. After the original sentence of 5 years incarceration was imposed, the court permitted defense counsel to argue further in mitigation. The court's response to this argument further illuminates the basis of his sentencing disposition. He said, "[W]e are dealing with here ... probably one of the most serious types of violations we encounter in the federal court. I, for one, am very reluctant to ever give probation."   .

We believe that the record thus reflects the trial court's awareness of the impropriety of enhancing a sentence on the basis of a prior acquittal,. and that the sentence was clearly based on (1) the serious nature of the offense, and (2) the *entire* background, characteristics, and life of the defendant without placing any undue reliance on the prior acquittal. We therefore find that the trial court did not abuse its discretion in referring to the circumstances pertaining to the defendant's arrest and acquittal on a prior charge.

■  2. The Trial Court Did Not Give Improper Consideration to a 1979 Misdemeanor Conviction for which the Defendant Received a Sentence of Supervision.

The defendant's next contention is that ⸰ the court erred in considering a 1979 misdemeanor conviction for which the defendant was placed on supervision. The defendant asserts that under Illinois law a sentence of supervision is not equal to a conviction. Without examining the merits of that proposition, we note only that, as is established above, a sentencing court may consider all prior criminal activity of a defendant, not just that which results in a conviction. *See Smith v. United States,* 551 F.2d 1193, 1196 (10th Cir. 1977), *cert. denied,* 434 U.S. 830, 98 S.Ct. 113, 54 L.Ed.2d 90. This argument is, therefore, without merit.

For these reasons we find that the trial court did not err in its consideration of the presentence report.

IV.  *The Court Did Not Err By Imposing An "Excessive" Sentence.*

■  The defendant's final contention is that the trial court imposed a sentence which was unduly harsh in light of sentencing statistics, the nature of the drug involved, and the defendant's good character. As we recently reaffirmed in *United States v. Ford,* 627 F.2d 807 (7th Cir. 1980), *cert. denied,* 449 U.S. 923, 101 S.Ct. 324, 66 L.Ed.2d 151, it is well settled as a general proposition that once it is determined that a sentence is within the statutorily prescribed limits, appellate review of the severity of the sentence is at an end. *Id.* at 813. *See Gore v. United States,* 357 U.S. 386, 393, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958). The defendant here was sentenced to four years incarceration to be followed by four years mandatory special parole. The sentence was imposed pursuant to 21 U.S.C. § 960, which provides that the crime to which the defendant pleaded guilty may be punished by a term of imprisonment up to a maximum of fifteen years, a fine of up to $25,-000, and a special parole term of not less than three years. The defendant's sentence was well within these statutory boundaries. We therefore decline to disturb the sentence imposed by the trial court on the grounds of alleged harshness.

## V. Conclusion.

For the aforementioned reasons, the judgment of conviction appealed from is affirmed.

SWYGERT, Senior Circuit Judge, dissenting.

I respectfully dissent from the majority's conclusion that the district court did not improperly rely on defendant's previous acquittal in imposing a sentence on the cocaine smuggling charge. Although I recognize that a sentencing judge has broad discretion in making a sentencing determination and that his inquiry is "largely unlimited either as to the kind of information he may consider, or the source from which it may come," *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), I believe that there are limits to the type of information a sentencing judge may consider. Further, unlike the majority I cannot conclude that the district judge did not enhance the sentence based on his evaluation of the merits of defendant's prior acquittal.

This court has never expressly decided the issue before us today, i. e., whether a trial judge may properly rely upon his own evaluation of the merits of a defendant's prior acquittal in making a sentencing determination. In *United States v. Cardi*, 519 F.2d 309 (7th Cir. 1975), this court stated that "[an] acquittal does not preclude the district court from considering the information concerning [the defendant's] association with these activities." *Id.* at 314 n.3 (citing *United States v. Haygood*, 502 F.2d 166, 171–72 n.16 (7th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 812

(1975)).[1] In *Cardi*, however, the district court relied upon independent evidence[2] of defendant's activities that were related to the prior indictment and acquittal. Further, unlike the case at bar, the court found that there was no indication that the district court based his sentencing decision on the information surrounding the prior acquittal. *Id.* at 314.

Other circuits have, however, expressly held that a sentencing judge may properly rely upon defendant's prior acquittals. *See United States v. Sweig*, 454 F.2d 181, 184 (2d Cir. 1972); *Billiteri v. United States Board of Parole*, 541 F.2d 938, 944 (2d Cir. 1976); *United States v. Bowdach*, 561 F.2d 1160, 1175 (5th Cir. 1977); *United States v. Morgan*, 595 F.2d 1134, 1137 (9th Cir. 1979). Nevertheless, I believe that such a rule conflicts with well-established principles of due process and also with the analysis of the Supreme Court in *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).

In *Townsend v. Burke, supra*, the trial court questioned the defendant at the sentencing hearing regarding his criminal record. The defendant stated that he had been found not guilty on one of the charges mentioned by the trial judge. Two of the other charges noted by the trial judge also resulted in acquittals, but no one provided the trial court with that information. The Supreme Court reversed the conviction on the ground that the defendant "was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." 334 U.S. at 741, 68 S.Ct. at 1255.

1. *United States v. Haygood*, 502 F.2d 166 (7th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 812 (1975), is not relevant to the issue presented by the instant case. In *Haygood*, the defendant contended that her conviction violated the double jeopardy clause of the Constitution because the sentencing judge in an earlier case had relied on the pending charge in that case in imposing a sentence. Our affirmance was based upon the defendant's failure to object to the trial judge's reliance on the prior charge. We noted, but did not express any opinion regarding, the Second Cir-

cuit's holding that a sentencing judge may rely upon a prior acquittal on the ground that, " 'Acquittal does not have the effect of conclusively establishing the untruth of all the evidence introduced against the defendant.' " *Id.* at 171–72 n.16 (quoting *United States v. Sweig*, 454 F.2d 181, 184 (2d Cir. 1972)).

2. The trial court in *Cardi* had before it the affidavit of an FBI agent and the testimony in open court of the director of the Illinois Investigating Commission.

Although the case at bar is different from *Townsend* in that here the trial court knew that defendant had been acquitted of murder, the reasoning of *Townsend* nevertheless applies. In the instant case, the record indicates that the district judge may have based the sentence in part upon "materially untrue" assumptions. In his remarks at the sentencing hearing, the district judge stated that: "Even though [defense counsel was] able to successfully defend [defendant] in the murder charge, the fact that a person even gets into that situation, I think, is some evidence that he has some instability if not some proclivity to commit crimes." As the majority noted, the report stated that the fatal incident occurred after the victim became "abusive and threatening." I do not believe that the record supports the trial court's conclusion that an acquittal of murder on the ground of self-defense is indicative of instability or a proclivity to commit crimes.

The trial judge went on to state that, "I am not thoroughly satisfied that [self-defense] is complete exoneration when a person is stabbed repeatedly about the face and body during a fight." Such a statement is an insult to our criminal justice system. A jury in that case heard the testimony of the witnesses, saw the evidence, and returned a verdict of not guilty; it is not for the sentencing court in another unrelated case to reassess the evidence presented in a prior prosecution.[3]

In *United States v. Johnson*, 507 F.2d 826, 832 (7th Cir. 1974) (Swygert, J., concurring in part and dissenting in part), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975), I argued that a pending charge should not be considered by a sentencing judge:

> To do otherwise is to infringe upon the basic rights and safeguards we provide a defendant in a criminal case. A defendant is entitled to a jury determination if he so desires. We should not permit a procedure that could result in allowing a judge's broad sentencing discretion to be used by prosecutors as a means for increasing a defendant's sentence on the basis of a factual determination as to other alleged criminal activity for which a jury conviction might not be possible.

A *fortiori*, we should not allow a charge of which the defendant was acquitted by a jury to be used by the sentencing court to enhance his sentence in a later unrelated case.

I recognize that it is not improper for a presentence report to contain information regarding the defendant's criminal record, including prior acquittals, pending charges, and arrests that did not reach the adjudication stage, *see* 18 U.S.C. § 3577 (1976); *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. Johnson, supra*, 507 F.2d at 829 (maj. op.), but I believe that principles of due process require limits on the use that a sentencing judge can make of such information. As the court noted in *United States v. Bailey*, 547 F.2d 68, 71 (8th Cir. 1976), "[t]he sentencing judge may look at an arrest record for background information. The sentencing judge, however, must not equate arrests as evidence of prior wrongdoing."

The district judge's error in the instant case was not in possessing or even considering the information about defendant's prior acquittal. Rather, his error was in attempting to make his own evaluation of defendant's culpability in that earlier case and disregarding at least in part the verdict of the jury. I believe that to allow a sentencing judge to enhance a sentence based on the facts surrounding a prior acquittal, or even to reassess the facts presented in that case, violates constitutional guarantees of due process. Accordingly, I would remand the case for resentencing.

---

**3.** Although the district judge went on to note that, "I can't try that case" and "I really can't go into the merits of it," it is clear from the transcript of the sentencing hearing that he was making his own evaluation of the murder acquittal when he concluded that self-defense may not be a complete exoneration under the circumstances of that case. *See* p. 926, 927 n.2 (maj. op.).