UNITED STATES of America, Plaintiff,

v.

Robert E. JONES, Defendant.

Crim. No. 79–CR–89.

United States District Court, D. Colorado.

Sept. 11, 1979.

---

Joseph F. Dolan, U. S. Atty., Nancy E. Rice, Asst. U. S. Atty., Denver, Colo., for plaintiff.

Robert C. Ozer, Denver, Colo., for defendant.

## ORDER

KANE, District Judge.

On April 13, 1979 the defendant pled guilty to a charge of possession of counterfeit obligations. The possible penalty for violation of this offense is imprisonment for not more than 15 years, or a fine of not more than $5,000 or both such imprisonment and fine. A presentence investigation was ordered and the defendant, who at all times previously, had been free on bond, appeared on May 11, 1979 for sentencing. Because the defendant had reported several severe disorders including cirrhosis, chronic alcoholism and schizophrenia which rendered him disabled for Social Security purposes, a period of observation and study not exceeding 90 days was ordered pursuant to 18 U.S.C. § 4205(d). At the May 11, 1979 hearing, the defendant and his counsel were advised that the court was specifically directing that the observation and study include a complete psychiatric evaluation including psychometric testing and a complete medical examination including a liver function study. The period of observation and study ensued and was completed without interruption or application to the court for any intervening orders.

The reports and recommendations of the Bureau of Prisons were completed and submitted to the court on August 13, 1979. Though available, the reports and recommendations were apparently not examined by counsel until moments before the final sentencing by 18 U.S.C. § 4205(c) which was scheduled for August 17, 1979 at 11:00 a. m. At this time counsel for the defendant expressed surprise and shock at the contents of the reports, castigated the probation department for being irresponsible in submitting the reports and requested that the case be transferred without the reports to another judge for sentencing.

Counsel was then advised that the court was proceeding in strict compliance with Rule 32(c) of the Federal Rules of Criminal Procedure and, without citation, reference was made to 18 U.S.C. § 3577 which prohibits the placement of any limitation "on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Within the context of the aforementioned statute the court was greatly concerned with the following statement of defense counsel which certainly implies some sort of plan to keep the court from being informed as contemplated by the statute:

> Mr. Ozer: . . . Going more specifically in respect to the matters before the court, this case was handled by both Mr. Jones and the United States Attorneys office with extreme care to bring about a crystallization of the issues that Mr. Jones was submitting himself to punishment for relative to this crime.

In view of the foregoing and because defense counsel asserted that, somehow, defendant's Fifth Amendment right against self-incrimination had been violated, a briefing schedule was established and the matter was continued to September 7, 1979. Defendant's brief was received and the cases cited therein reviewed in depth. The government's brief cited no cases and did not address the issues presented by the defendant. On September 7, 1979 the court denied the motions to suppress defendant's statements made during the period of observation and study and to transfer the case to another judge. After hearing from the defendant and his counsel, the court sentenced the defendant to the custody of the Attorney General for a period of three years. Because of the explicit allegations of impropriety made by defense counsel against the probation department and the implicit statements concerning efforts to withhold information the court advised that this memorandum opinion would follow.

First, to avoid any great mystery, it should be noted that the reports obtained as a result of the period of observation and study present an entirely different picture of the defendant than that which he attempted to give to the court when first sentenced on May 11. The reports disclose that the defendant is a person of above average intelligence who tends to exaggerate his alleged symptoms. Both the testing psychologist and the examining psychiatrist arrived independently at the conclusion that the defendant is not now and never has been schizophrenic. The medical examinations revealed that defendant's cirrhosis was sub-clinical and that additional medical treatment was not required.

The diagnostic impression coincides with the evaluation made by the staff at Emerson House, the contract agency which performed the classification study. The reports describe the defendant as a sociopathic personality who is neither immediately violent nor aggressive, but who is extremely adept at manipulating others in order to obtain desired results with as little personal commitment as possible. During the period of observation and study the defendant failed to demonstrate to the staff a positive attitude either about his placement or his future aspirations. He expressed little acceptance of responsibility for his involvement in the instant offense and even less remorse.

When asked to trace the origins of the criminal activities for which he was convicted, the defendant volunteered the information that in 1967 he shot and killed a hunting companion. Though the recitations are neither complete nor clear the defendant suggests that he feels guilty because the killing was actually a murder even though the coroner's investigation concluded that it was an accident.

In quite a different context, the defendant "freely discussed various other serious crimes such as embezzlement of some thousands of dollars from the United Fund Drive and the Chamber of Commerce." Finally, the defendant traced his present difficulty to heavy drinking and grief following the untimely death of the last of his four wives.

It is thus to be seen that these statements—whether they are incriminating or intended to elicit sympathy is problematical—were given voluntarily during the course of a period of observation and study which was directed to an evaluation of the defendant's ability to be introspective, evaluate his own behavior and demonstrate a potential for change in his behavior so that institutionalization would not be required.

While the suspect killing and other serious crimes such as embezzlement appear to be the matters which counsel considers to be most prejudicial, it is to be observed that virtually none of the facts contained in the reports were denied, contradicted or mitigated by the defendant nor were any objections made to the conclusions contained in the reports. Thus, the general issue is not whether the court is acting upon false information or erroneous conclusions and recommendations of experts. Rather, the issue is whether such data allegedly obtained in violation of defendant's Fifth Amendment right against self-incrimination may properly be included in defendant's presentence report and considered during sentencing.

Assuming, for the sake of discussion only, that the facts presented show a violation of defendant's Fifth Amendment right may the resulting evidence be included and considered.

■ It is beyond doubt that the scope of a judge's inquiry on sentencing is broad and relatively unlimited. As said in *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), a sentencing judge. "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider or the source from which it may come." In the seminal case of *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the Supreme Court announced this proposition and held that there was no error where a judge had considered a defendant's participation in criminal conduct for which he had not been convicted. It was the *Williams* decision that the Congress essentially codified in 18 U.S.C. § 3577. This general proposition was recently reaffirmed in *United States v. Grayson,* 438 U.S. 41, 48–49, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). Defendant does not challenge this proposition and concedes that a judge may consider a defendant's past criminal activity, even if it has not resulted in previous convictions, which is, by the way, the law of this circuit. *See Smith v. United States,* 551 F.2d 1193 (10th Cir.

1977), *cert. denied,* 434 U.S. 830, 98 S.Ct. 113, 54 L.Ed.2d 90; *United States v. Majors,* 490 F.2d 1321 (10th Cir. 1974), *cert. denied,* 420 U.S. 932, 95 S.Ct. 1136, 43 L.Ed.2d 405.

The Supreme Court has said that due process applies to the sentencing process as well as the trial itself, *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), even though what is required by due process may not be the same for both. Generally there are *two exceptions* to the proposition stated above regarding the latitude of a judge's inquiry on sentencing: that is, (1) sentencing cannot be based on erroneous information; and (2) sentencing cannot be based on certain information linked to the denial of a constitutional right.

■ The first of these exceptions is straightforward and well-established. Both *United States v. Tucker, supra,* and *Williams v. New York, supra,* recognize a due process right to be sentenced only on the basis of accurate information. Accordingly, a defendant should have the opportunity to rebut adverse or inaccurate information in a presentence report. *See, e. g., Smith v. United States,* 551 F.2d 1193 (10th Cir. 1977), *cert. denied,* 434 U.S. 830, 98 S.Ct. 113, 54 L.Ed.2d 90; *United States v. Read,* 534 F.2d 858 (9th Cir. 1976); *Shelton v. United States,* 497 F.2d 156 (5th Cir. 1974); and *United States v. Rosner,* 485 F.2d 1213 (2d Cir. 1973), *cert. denied,* 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672. It is noted again that defendant does not contest the accuracy of the information here in question.

The second of the exceptions is more problematic. The only situation on which the Supreme Court has placed its stamp of disapproval is where a sentencing court has considered past convictions where defendant was denied the right to counsel. *United States v. Tucker, supra.* The Tenth Circuit said in *United States v. Majors, supra,* that a constitutionally invalid conviction cannot be considered, and another circuit has said that consideration of a probation revocation which has been obtained in viola-

tion of a constitutional right was also improper. *Gill v. Estelle,* 530 F.2d 1152 (5th Cir. 1976).

Beyond this situation, the law becomes more troublesome. The Supreme Court has not addressed the question whether illegally obtained evidence may be considered during sentencing; instead, there appear to be four leading decisions by the courts of appeals. *See United States v. Lee,* 540 F.2d 1205 (4th Cir. 1976), *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177; *United States v. Vandemark,* 522 F.2d 1019 (9th Cir. 1975); *United States v. Schipani,* 435 F.2d 26 (2d Cir. 1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334, and *Verdugo v. United States,* 402 F.2d 599 (9th Cir. 1968), *cert. denied,* 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105. In *Vandemark,* the Ninth Circuit greatly narrowed its *Verdugo* decision, with the result that illegally obtained evidence should be excluded from sentencing only when a refusal to do so would provide a significant incentive for improper law enforcement conduct. Stated the other way around, it should be excluded only when its exclusion is a necessary deterrent to improper or bad faith conduct. The theory, as set out in the *Lee* case, is that exclusion of illegal evidence from trial is the real deterrent, and that the additional deterrent benefit of excluding it from sentencing is generally outweighed by the costs which would be imposed vis-a-vis the relevant information that would be kept from a judge's consideration.[1] Given the Ninth Circuit's backing away from a broad reading of *Verdugo, supra,* the Second, Fourth and Ninth Circuits appear to agree that illegally obtained evidence may be considered during sentencing so long as that evidence was gathered during the basic investigation and not instead for the purpose of "inflating" or enhancing a defendant's sentence. The theory is that the deterrent effect of the exclusionary rule is only required in the latter situation, since otherwise the evidence has already been excluded from trial.

In this case the record is devoid of any showing of any bad faith or improper conduct on the part of any law enforcement officials. Apparently, by his somewhat cryptic accusations, defense counsel wishes the rule, which has not been violated in any event, to extend to probation officers and examining psychiatrists as well. However, the Tenth Circuit has said, "the probation service is an arm of the Court . . . not an investigative arm for the prosecution." *United States v. Dingle,* 546 F.2d 1378, 1380–81 (10th Cir. 1976).

The material sought to be suppressed was, as stated, volunteered to non-law enforcement personnel during a period of observation and study provided by law. The rule discussed above simply does not apply.

■ Actually, the dispositive issue is whether there has been any kind of violation of defendant's Fifth Amendment right against self-incrimination. The Supreme Court has made it clear that the Fifth Amendment only protects one against compelled testimonial or communicative declarations. *See, e. g., Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

■ The defendant has made no showing of actual coercion, intimidation or bad faith, but instead relies on the fact that defendant was in "custody" at the time of the observation and study. Several facts blunt this argument. Here there was in fact no

---

1. All of this balancing analysis regarding the exclusionary rule arises because of *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), which is now a leading case on the subject. In *Calandra,* the court rejected any *per se* rule and said that application of the exclusionary rule depends in each case on a balance between the deterrent benefit to be achieved and the cost to be suffered in terms of the lost evidence. The former of these facts is the one that really controls; that is, whether exclusion will have an appreciable deterrent effect on improper official conduct. All of this takes place, of course, in the context of what Justice Marshall has called the "slow strangulation" of the exclusionary rule. *See, e. g., United States v. Calandra* (illegally obtained evidence may be considered by grand jury; *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (illegally obtained confession may be used for impeachment if voluntary).

interrogation in the sense of an investigation into the allegedly disclosed crimes. There has been no arrest or accusation concerning those "crimes," and there was no investigation being conducted as to them. In what seems a much clearer case—*where a grand jury is conducting an investigation into particular crimes*—the Supreme Court has held that a grand jury may consider incompetent or illegally-obtained evidence, that a resulting indictment based on such evidence is not subject to challenge, *United States v. Calandra, supra,* and that suppression of self-incriminating statements made by an accused before a grand jury—where the accused had not been warned that he was a potential defendant—was improper. *United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977).

The defendant has cited *Hollis v. Smith,* 571 F.2d 685 (2nd Cir. 1978) and *Smith v. Estelle,* 445 F.Supp. 647 (N.D.Tex.1977), in support of his argument. In *Hollis,* Judge Friendly commented, in dicta, that a subject of a psychiatric examination could not be "*required to disclose* evidence tending to show himself guilty of other crimes still open to prosecution." (Emphasis added.) In this case, not only is there no compelled disclosure, there isn't even an investigation. In *Smith v. Estelle,* the district court said that a defendant must be notified of his right to remain silent, but that was where psychiatric testimony was used on the specific issue of "dangerousness" in a determination by a jury whether to impose the death penalty. Obviously, the psychiatric report was not a mere component of a regularly compiled presentence report but was central to a life or death issue in a jury trial. The rule neither adheres nor relates to the defendant's case.[2]

A final comment regarding the distinction observed in this district between so-called plea bargaining and sentencing is apparently necessary. Previously quoted from the transcript is a statement of counsel regarding the extreme care "to bring about a crystallization of the issues that Mr. Jones was submitting himself to punishment for relative to the crime." The quote continues:

"There is a one-count information that was the result, if you will, of a consideration of Mr. Jones' plea and his cooperation in the continuing investigation. With all this care that all sides and all parties have taken, the Emerson House now throws it to the winds and indicates there is a large scale distribution of counterfeit money involved, . . .."

Before the defendant's plea of guilty was accepted by the court, a detailed examination was made concerning voluntariness, awareness and knowledge of consequences and the existence of a factual basis to support the charge made. The defendant was repeatedly advised that the court would not consider at time of sentencing whether the defendant entered a plea of guilty or was found guilty by a jury. Further, the defendant was advised that the court had nothing whatever to do with any agreement made between him and the government and would not consider such an agreement. The defendant and his counsel were specifically advised before the plea was accepted that whether the defendant had agreed with the government to cooperate in any continuing investigation would be totally irrelevant to the disposition of sentence in the case.

The Federal Rules of Criminal Procedure prescribe the factors to be considered at sentencing. These include any prior criminal record of the defendant, information about his characteristics, his financial condition and the circumstances affecting his behavior. Always the court must balance the liberty interests of the defendant with the safety and welfare interests of the public. The prospects of rehabilitation, punishment and equality of treatment are the means by which the enumerated factors are to be considered in attempting to strike that balance. Were that balance to be weighted in favor of those who provide services for the government, this court would be nothing more than an arm of the prosecution. The consequence should require no further elaboration.

2. It is to be noted that in Texas penalties are set by the jury, not by the court.