**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert E. JONES, Defendant-Appellant.**

**No. 79-2010.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Dec. 17, 1980.

Decided Feb. 10, 1981.

Joseph Dolan, U. S. Atty., and Nancy E. Rice, Asst. U. S. Atty., Denver, Colo., for plaintiff-appellee.

Robert C. Ozer, Denver, Colo., for defendant-appellant.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendant above named had entered a plea of guilty to a charge of possession of counterfeit obligations contrary to 18 U.S.C. § 472. The cited statute authorizes the penalty of imprisonment for not more than fifteen years or a fine of not more than $15,000, or both fine and imprisonment.

A sentencing hearing was held before the trial court following the plea of guilty and on that occasion counsel for the defendant in making a plea in mitigation of the sentence stated that defendant had had a history of mental disorders which were exacerbated by a drinking problem. Because the pre-sentence report was somewhat vague as to the extent of these problems, the trial court reserved sentencing until further psychiatric evaluation of the defendant could be had. The defendant was committed to the Attorney General for the maximum period authorized by law and for the purpose of a study in accordance with 18 U.S.C. § 4205(d). The results of said study were to be furnished to the court within three months unless the court granted further time not to exceed an additional three months. The court further ordered the defendant be returned to court and that the sentence imposed should be subject to modification in accordance with the statute in question, namely § 4205(c). It was also ordered that the study be completed at the Emerson House Community Center. It was ordered further that the defendant be given

psychiatric, psychological and medical evaluations including a liver function test. The MMPIN Wexler tests were also requested. Following the evaluation at the Emerson House the defendant was returned to court and the sentencing hearing was held.

## I. WAS THE PSYCHIATRIC REPORT INVALID BECAUSE IT REVEALED. OTHER OFFENSES?

At the sentencing hearing defendant's counsel objected to the use of the Emerson House reports, including the psychiatric report. He contended that the defendant's Fifth Amendment rights had been violated. The specific matter raised by counsel was that the defendant's right against self-incrimination had been infringed because the defendant had told the psychiatrist that he had committed several other crimes, including the murder of a friend, which murder had been disguised as a hunting accident. The court granted the defense counsel leave to prepare his objections, then denied the objections and sentenced the defendant to three years in prison. 475 F.Supp. 1152 (D.C.). The defendant has appealed this disposition.

■ Title 18 U.S.C. § 3577 codifies the trial court's right to conduct a broad inquiry prior to sentencing. This right is subject to constitutional limitations, however. *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). These cases recognize a due process right to be sentenced only on information which is accurate. *United States v. Lee*, 540 F.2d 1205, 1211 (4th Cir.), cert. denied, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976). The trial court is allowed to consider all relevant facts when sentencing a defendant but those facts must be verified if necessary. If, in the instant case, the trial court had relied to a substantial degree on evidence of other crimes the defendant had, during his psychiatric examination, claimed to have committed, that is, if the court had acknowledged the alleged crimes as crimes and had caused the sentence to be increased, it would have been necessary for

the evidence regarding those crimes to have been true and accurate. This is so regardless of whether the Fifth Amendment was involved.

■ The evidence here, however, was not used substantively. It was used by the trial court only for the purpose of determining the defendant's mental status. It was considered only insofar as it showed that the defendant believed he had committed the alleged crimes. It was not accepted as evidence that the defendant had actually committed those crimes. The trial court's record clarifies this, and sets forth the court's use of this evidence in very clear terms as follows:

> I view the statements and do consider them and am influenced by them with respect to his alleged participation or his alleged perpetration of the killing of a hunting companion and of his other statements involving his having been involved in get-rich quick schemes of one sort or another.
>
> Based on the information I have before me, it is not the admission that he shot and killed a hunting companion or the reason for it which is of importance, but the fact that he places importance upon that as a basis for his downfall, if you will. He places great importance.
>
> Now, whether he feels guilty and inflates that to a question of murder, or whether he is using this as an effort to obtain some kind of additional sympathy or ability to manipulate those who were conducting the observation and study is a matter which in my view is lost in its extremity of discussion and it seems to me to be important only in terms of the fact that this is what Mr. Jones was emphasizing as an important part of his background. (ROA, Vol. V, p. 9).

Thus the court has clearly set forth the extent to which he considered this evidence. We do not consider it necessary to go beyond these statements. In view of the fact that the trial court made use of this evidence for a very limited purpose, it makes no difference whether the alleged crimes were actually committed by the defendant,

whether they were real or whether they were imaginary. The statements were not used as evidence of past crimes. Furthermore, the fact that the trial court sentenced the defendant to three years imprisonment, notwithstanding that the statute allowed a maximum of fifteen years, together with the fact that the evaluating team recommended that Mr. Jones be imprisoned since he "might be brought into a receptive frame of mind by a period of incarceration," clearly indicates that the trial judge did not increase the sentence because he believed that defendant was guilty of such prior offenses and that this constituted an aggravated factor.

In view of the trial judge's explanations as to how the evidence was used, we need not consider whether the evidence was used to establish a criminal record as such.

The actual statement which Jones gave to the psychiatrist was that he had murdered his friend Tully back in 1967 while the two were on a drinking and rabbit hunting outing because he feared that Tully would discover the fact that he, Jones, was having an affair with Tully's wife. The coroner's jury at that time held that the shooting was accidental. Further, Jones claimed to have embezzled thousands of dollars from the United Fund Drive and the Chamber of Commerce and stated that he had been getting away with things like this for a long time.

From the evidence which is apparent and is available to this court, it would not have been possible for the trial court to have actually verified whether Jones really did murder Tully or to determine whether Jones was merely suffering from guilt feelings which led to an imaginary conclusion that he had indeed murdered Tully. Also, it would have been impossible for the trial court to have verified the factual accuracy of the alleged crimes of embezzlement.

We note that the F.R.Crim.P. 32(c)(3)(A), 18 U.S.C.A. allows the defendant or his counsel an opportunity to introduce factual testimony or other information relating to any alleged inaccuracies in the pre-sentence report. While normally this provision would allow the defendant to remove factual inaccuracies in the pre-sentence report from the trial court's consideration, *Smith v. United States*, 551 F.2d 1193 (10th Cir. 1977), this procedure would not solve the present dilemma for, in the instant case, it would not have been possible for the defendant's counsel to prove that the alleged crimes were figments of the defendant's imagination. Obviously the defendant did not believe that to be the case.

In view of the fact that the trial court could not have checked out the accuracies of the statements which were made, it would not have been permissible for the court to consider the defendant's statements as substantive evidence that he had committed the prior crimes. However, since the trial court did not so consider them, no error was committed. Even though the Fifth Amendment is applicable, it is permissible for the trial court to consider the defendant's incriminating statements as determinative of defendant's state of mind.

There is no question but that the Fifth Amendment does offer protection in the sentencing process. *See* for example, *In re Daley*, 549 F.2d 469 (7th Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). The scope of the privilege against self-incrimination has been enunciated by the Supreme Court as follows:

> The privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory. * * * it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used.

*Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527 (1967).

In *United States v. Tucker, supra*, the district court had considered evidence of two prior convictions of the defendant which were constitutionally invalid, and the Ninth Circuit Court of Appeals remanded the cause to the district court for resentencing free of consideration of the prior invalid

convictions. While the Supreme Court recognized that the trial court had wide discretion in determining what sentence to impose and that before making such determination that court could conduct a broad inquiry unlimited as to the kind of information it could consider or the sources from which the information might come, the Supreme Court nevertheless affirmed the decision of the Ninth Circuit. Its ruling was based on its conclusion that the sentence was founded at least in part upon misinformation of constitutional magnitude. 404 U.S. at 447, 92 S.Ct. at 591. In the instant case, however, such is not the case.

■ The Fourth Circuit in *Gibson v. Zahradnick*, 581 F.2d 75 (4th Cir.), *cert. denied*, 439 U.S. 996, 99 S.Ct. 597, 58 L.Ed.2d 669 (1978) ordered that the defendant be given a psychiatric examination by a state employed psychiatrist for the purpose of ascertaining whether he was able to stand trial. The court found the examination procedures not voluntary and recognized that the Fifth Amendment applied. Notwithstanding that the court held that an incriminating statement made by the defendant during that examination could be introduced for the jury's examination of the issue of defendant's sanity, the jury was not allowed to consider the statement in connection with the issue of the defendant's guilt for the crime to which the incriminating statement referred. Under this reasoning, then, even if this court found that the examination proceeding to which Jones was subjected was involuntary and that, therefore, incriminating statements made by Jones could not be used against him on the issue of guilt, those statements could be considered by the trial court in determining Jones' mental status at the time of sentencing. As Judge Haynsworth wrote in *Gibson*:

> A person's mental condition, his motivation and his delusions would be undiscoverable in most instances unless the psychiatrist knows what the defendant has done and can engage in a penetrating discussion with the person about it. 581 F.2d at 79.

*See also United States v. Steinberg*, 428 F.Supp. 77 (D.C.1977).

## II. IS THERE EVIDENCE TO SUPPORT THE DEFENDANT'S CONTENTION THAT HE WAS COMPELLED TO ANSWER THE PSYCHIATRIST'S QUESTIONS?

■ The defendant contends that the statements which he made to the examining psychiatrist were compelled, and he bases this contention on the following: *First*, that Judge Kane's direction to the defendant to cooperate with those conducting the observation and study rendered any statements which he would make involuntary, or, *second*, that the study created an inherently coercive setting equivalent to custodial interrogation and was governed by *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In this connection the record does not disclose that the defendant has ever contended that the psychiatrist's questions resulted in undue pressures being put upon him whereby his will was overcome and the confession was elicited.

There is one decision, *Estelle v. Smith*, 602 F.2d 694 (5th Cir. 1979), which bears some resemblance to this case. This was a murder case in which capital punishment was inflicted. The questions presented to the Supreme Court (now on petition for certiorari) are (1) whether a capital murder defendant is denied due process by the state's use of psychiatric testimony in connection with the punishment phase of the case on the issue of dangerousness, and (2) whether such a defendant is entitled to be advised of certain rights prior to the examination. *See Estelle v. Smith*, 49 U.S.L.W. 3090. The case was argued in October 1980 but no opinion has been handed down as of this date.

In any event the result in the *Estelle v. Smith* case could not change the result here because the facts, including the charge, murder, a capital offense, are vastly different from the facts which are presented in the present case. Thus we do not believe that the Supreme Court's decision in *Estelle v. Smith* could affect the result here.

## III.

The remaining question is whether there is any merit in the defendant's contention that the trial court's admonition to him to cooperate with the observation and study proceedings constituted compulsion. This matter has already been before the Supreme Court. There it was held that, at least where the government had no substantial reason to believe that the requested disclosures were likely to be incriminating, the privilege against self-incrimination may not be relied upon unless it was invoked in a timely fashion. *See Roberts v. United States*, 445 U.S. 552, 559, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980); *Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 is cited in support of the decision in *Roberts*. That case holds that unless a witness objects, the government ordinarily may assume that its processes are not eliciting evidence or testimony which the witness considers to be incriminating. In our view, the statement of the court to cooperate is certainly not to be regarded as putting undue pressure upon the defendant to make statements which he otherwise would not make. Cf. *Hoffman v. United States*, 341 U.S. at 479, 486–7, 71 S.Ct. at 814, 818, 95 L.Ed.2d 1118 (1951); *United States v. Pierce*, 561 F.2d 735, 741 (9th Cir. 1977).

Our conclusion is that although the contentions here are advanced in good faith by counsel at the same time there is nothing in either the preparations which were made or the action which was taken which would indicate any effort to obtain substantive evidence from the defendant. Indeed, the statements which he made to the psychiatrist are shown to have been given by the defendant on a completely voluntary basis. There is no suggestion that any pressure whatsoever was exerted in order to obtain these statements.

From a reading of the record we are convinced that it is error free and that the judgment should be affirmed. It is so ordered.