UNITED STATES of America ex rel.
Joseph R. CYBURT, Petitioner,

v.

Michael P. LANE, Director, Illinois De-
partment of Corrections; and George
Welborn, Warden, Centralia Correc-
tional Center, Respondents.

No. 82 C 3804.

United States District Court,
N.D. Illinois, E.D.

Oct. 18, 1984.

Joseph R. Cyburt, pro se.

Neil Hartigan, Atty. Gen., James E. Fitzgerald, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

Joseph R. Cyburt brings this petition seeking habeas corpus relief under 28

U.S.C. § 2254. On June 28, 1973, Cyburt entered guilty pleas to multiple charges stemming from two separate incidents. In the first incident, Cyburt sexually assaulted an eight-year-old child after kidnapping her as she was on her way to grammar school. One week later, Cyburt lured his sixteen-year-old half sister into his apartment and raped her. Respondents have answered the petition. Determining from the record that no evidentiary hearing is required to decide the issues posed, the court dismisses the petition for the reasons that follow. *See* Rule 8(a), Rules Governing Section 2254 Cases.

This is not the first time that Cyburt has sought habeas corpus relief from this court. Because an understanding of the prior proceedings is important to the resolution of the claims advanced in this petition, the court starts by charting the history of Cyburt's several attempts to overturn his guilty plea.

Cyburt did not directly appeal from his conviction. He first sought to challenge the validity of his guilty plea and sentence in a state post-conviction proceeding. After appointing counsel to file an amended petition, the trial court dismissed Cyburt's application for post-conviction relief without an evidentiary hearing.

Cyburt appealed the dismissal. *People v. Cyburt*, 50 Ill.App.3d 414, 8 Ill.Dec. 618, 365 N.E.2d 1004 (1977). On appeal he raised four issues: (1) that his guilty plea was induced by promises of immediate psychiatric care and therefore not knowingly and intelligently given; (2) that the circumstances surrounding the plea proceedings raised sufficient questions of doubt as to Cyburt's competence so as to require a competency hearing; (3) that the standard of competence required to plead guilty is higher than the standard required to stand trial; and (4) that the trial court improperly imposed sentences on multiple charges. The state appellate court reversed Cyburt's

conviction and sentence for incest and affirmed dismissal of the amended post-conviction petition in all other respects.

Cyburt then filed a petition for writ of habeas corpus in federal court. In the habeas corpus petition Cyburt again claimed that his guilty plea was involuntary and that his behavior during the plea proceedings was so bizarre as to raise a *bona fide* doubt as to his competency, thereby requiring the trial judge to conduct an evidentiary hearing on the matter before accepting his plea. In addition to these claims, Cyburt for the first time challenged the constitutional effectiveness of his defense counsel. The district court dismissed the petition on the merits without hearing and the Seventh Circuit affirmed the order of dismissal. *United States ex rel. Cyburt v. Rowe*, 638 F.2d 1100 (7th Cir.1981). Cyburt appeared pro se throughout the proceedings on his federal habeas corpus petition.

On June 17, 1982, Cyburt again filed for federal habeas corpus relief. The instant petition, liberally construed in accordance with *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), presents four claims for relief: (1) that an admission of guilt contained in a psychiatric report submitted to the trial judge deprived him of his Fifth Amendment privilege against self-incrimination under the rule announced in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); (2) that the State reneged on alleged promises made in exchange for Cyburt's negotiated guilty plea; (3) that Cyburt's sentences were not reduced after two of the charges against him were vacated; and (4) that Cyburt was barred from presenting a number of mitigating factors to the sentencing court.

█ Respondents contend that Cyburt's second petition should be dismissed as successive under Rule 9(b) of the Rules Governing Section 2254 Cases.[1] Traditional

---

1. Rule 9(b) provides that:
   A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the

   prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to

principles of *res judicata* do not apply to habeas corpus proceedings. *Fay v. Noia,* 372 U.S. 391, 423, 83 S.Ct. 822, 840, 9 L.Ed.2d 837 (1963). But a prisoner's right to apply repeatedly to federal courts for habeas corpus relief is not without limits. "While the writ should never be denied in the proper case, judicial economy dictates restrictive limitations on reruns." *United States ex rel. Townsend v. Twomey,* 452 F.2d 350, 357 (7th Cir.1972), *cert. denied,* 409 U.S. 854, 93 S.Ct. 190, 34 L.Ed.2d 98 (1972). The limitations on the court's discretion to entertain successive petitions for habeas corpus are presently embodied in Rule 9(b).

■ Rule 9(b) provides two grounds for dismissal of successive applications for federal habeas corpus relief. The first ground permits dismissal of claims raised in earlier petitions and dismissed on the merits. The second ground permits dismissal of a petition raising new and different grounds for relief if failure to assert those grounds in a prior petition is found to constitute an abuse of the writ. Abuse of the writ is an affirmative defense which the state must plead. *Price v. Johnston,* 334 U.S. 266, 291–92, 68 S.Ct. 1049, 1062–63, 92 L.Ed. 1356 (1948); *Robinson v. Fairman,* 704 F.2d 368, 370 (7th Cir.1983). Once the state has met its burden of pleading abuse of the writ, the burden shifts to the petitioner to justify his failure to raise the claim in the earlier petition. *Robinson,* 704 F.2d at 370. In order to meet this burden, petitioner must be given a reasonable opportunity to respond to a request for dismissal under Rule 9(b). *Id.* In compliance with the procedure outlined in *Price* and *Robinson,* the court has directed Cyburt to use the Model Form for Use in 28 U.S.C. § 2254 Cases Involving a Rule 9 Issue to explain his reasons for filing a successive petition in discharge of his burden of proving he has not abused the writ. Cyburt has responded and the court must now determine whether his petition should be dismissed as successive.

Respondents urge dismissal of Cyburt's petition on the ground that the claims asserted are merely a reiteration of those considered and dismissed on the merits in the prior habeas proceeding. Cyburt argues that three of the grounds presented in the second petition are new and different from those presented in the first. He concedes, however, that the claim alleged in ground four of the petition involves some of the issues addressed in the initial petition. The court examines this claim first.

■ In ground four Cyburt alleges he was denied a hearing on the question of fitness as well as other opportunities to present mitigating circumstances to the trial court. As is evident from the discussion of the history of Cyburt's prior sojourn through the federal courts, the earlier proceedings conclusively determined both the constitutionality of accepting Cyburt's guilty plea without first conducting a hearing on his competency and the voluntariness of the plea. Because the earlier proceedings adjudicated these claims on the merits, Rule 9(b) gives this court discretion to dismiss ground four as successive. Exercise of such discretion to dismiss is restrained only by the "ends of justice" exception. Under this exception, the court will review anew a ground rejected on the merits in a prior application for habeas relief only if petitioner shows that redetermination of the earlier decided grounds would serve the ends of justice. *Johnson v. Wainwright,* 702 F.2d 909, 911 (11th Cir.1983); *Townsend,* 452 F.2d at 355. Cyburt has not met that burden here.

■ Cyburt cites a lack of counsel as reason for permitting him to relitigate the question of his fitness at the plea proceedings. But more than a mere absence of professional legal representation is needed to justify relitigation of claims already decided adversely to a prisoner who files multiple applications for federal habeas corpus relief. *See Johnson,* 702 F.2d at 912. The record of Cyburt's first case indicates that both the trial and appellate court gave Cyburt's claims full and fair consideration.

assert those grounds in a prior petition consti-

tuted an abuse of the writ.

Cyburt does not here present any additional facts or otherwise materially challenge the legal basis underlying the dismissal of his claims on the first try. Nor does he allege any particular prejudice resulting from his lack of professional legal assistance. In these circumstances, the ends of justice do not require this court to consider again Cyburt's renewed challenge to his competency to enter a plea of guilty and to the voluntariness of his plea agreement. *See Sanders v. United States*, 373 U.S. 1, 16–17, 83 S.Ct. 1068, 1077–1078, 10 L.Ed.2d 148 (1963). Accordingly, the claims Cyburt advances in ground four of the petition are dismissed under Rule 9(b) as repetitive.[2]

The three remaining grounds for relief alleged in the petition were not presented in Cyburt's first application for federal habeas corpus relief. Under Rule 9(b), the court can avoid full consideration of the merits of these new grounds only if it finds that petitioner's failure to raise them in the earlier petition constitutes an "abuse of the writ." The proper standard for defining "abuse of the writ" is an open question in this circuit. *Robinson*, 704 F.2d at 370 n. 5.

Definition of abuse of the writ must start with the legislative history of Rule 9(b). As originally promulgated by the Supreme Court, Rule 9(b) authorized dismissal of any new ground in a successive habeas corpus petition if failure to assert it in the first petition is "not excusable." But Congress rejected the language submitted to it and replaced the not excusable standard with the abuse of the writ standard. The reasons for this change, as expressed by the House Judiciary Committee, was that "the 'not excusable' language [of the proposed Rule] created a new and undefined standard that gave a judge too broad a discretion to dismiss a second or successive petition." H.R.Rep. No. 1471, 94th

Cong., 2d Sess. 5–6, *reprinted in* 1976 U.S. Code Cong. & Ad.News 2478, 2482. In modifying Rule 9(b) before final enactment, Congress expressly intended that the abuse of the writ standard conform with existing law, *i.e. Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) as codified in 28 U.S.C. § 2244(b). *Id.* at 5, 83 S.Ct. at 1071.

In *Sanders*, the Supreme Court, drawing on prior precedent and existing statutes, set out basic rules to guide the lower courts in handling successive motions under 28 U.S.C. § 2255 and petitions for writ of habeas corpus. The Court indicated that principles of equity governed the abuse of writ determination, but that the decision to disentitle a prisoner from seeking habeas relief because of prior conduct must be "narrowly circumscribed" in light of the historical role of habeas corpus and the important interests it protects. *Sanders*, 373 U.S. at 17–18, 83 S.Ct. at 1078. As examples of abusive use of the writ, *Sanders* referred to a prisoner who "deliberately withholds" grounds from a petition "in the hope of being granted two hearings rather than one" and to the filing of needless piecemeal litigation "whose only purpose is to vex, harass, or delay." *Id.* at 18, 83 S.Ct. at 1078. Implicit in these examples is intentional conduct.

That *Sanders* requires intentional conduct to justify foreclosing a prisoner from asserting a new ground for relief in a successive petition is further supported by its express adoption of *Fay v. Noia, supra,* and *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), as "the test governing whether a second or successive application may be deemed an abuse by the prisoner of the writ or motion remedy." *Id.*, 373 U.S. at 18, 83 S.Ct. at 1078. In *Fay*, the Supreme Court held that a state criminal defendant could not waive his

---

2. Ground four is a mishmash of purported infirmities in the proceedings leading up to Cyburt's plea and sentencing. As indicated in the text, nothing Cyburt presents undercuts the prior federal court rulings upholding the validity of the plea itself. Thus, to the extent ground four may be read to raise new claims concerning the lack of fairness in the procedures preceding the plea, these claims must be deemed to be waived by Cyburt's knowing and intelligent decision to plead guilty to the charges against him. *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1972).

right to seek federal habeas corpus relief by failing to appeal his conviction unless his failure to appeal could "fairly be described as deliberate by-passing of state procedures." *Fay*, 372 U.S. at 439, 83 S.Ct. at 849. In defining deliberate by-pass, *Fay* harked back to the definition of waiver ascribed to in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938): "an intentional relinquishment or abandonment of a known right or privilege." Although, as judicial precedent, *Fay* is nearly moribund, *see United States ex rel. Spurlark v. Wolff*, 699 F.2d 354, 358–59 (7th Cir.1983), its lack of vitality is not important here. What is important is that *Sanders* adopted *Fay* as the test for determining abuse of the writ. Because the standard it adopts is codified in Rule 9(b), *Sanders*, and through it *Fay*, represent the law that federal courts are bound to apply with respect to questions of writ abuse. A fair reading of the *Sanders-Fay-Townsend* trilogy compels the conclusion that abuse of the writ encompasses only intentional conduct. To permit disfranchisement of the right to seek habeas relief under a lesser standard would be inequitable for, as *Townsend* recognized:

> The primary purpose of a habeas corpus proceeding is to make certain that a man is not unjustly imprisoned. And if for some justifiable reason he was previously unable to assert his rights or was unaware of the significance of relevant facts, it is neither necessary nor reasonable to deny him all opportunity of obtaining judicial relief.

372 U.S. at 317, 83 S.Ct. at 759 (quoting *Price v. Johnston*, 334 U.S. at 291, 68 S.Ct. at 1062).

Citing *Townsend*, some courts have included "inexcusable neglect" as a ground for finding abuse of the writ. *See McLaughlin v. Gabriel*, 726 F.2d 7, 10 (1st Cir.1984); *Stephens v. Kemp*, 721 F.2d 1300, 1303 (11th Cir.1983); *Paprskar v. Estelle*, 612 F.2d 1003, 1006 (5th Cir.), *cert. denied*, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980). Although *Townsend* uses the phrases "inexcusable neglect" and "inexcusable default" to describe the standard set out in *Fay*, these terms are misleading and inappropriate when applied to define "abuse of the writ" under Rule 9(b). The use of inexcusable neglect, read in the context of the *Townsend* discussion as to when a failure to develop crucial evidence at trial would require a federal court to exercise its power to conduct an independent fact-finding hearing in a habeas corpus proceeding, clearly was not meant to alter or dilute the deliberate bypass standard enunciated in *Fay*, a fact recognized by both the Fifth and Eleventh Circuits in *Thomas v. Zant*, 697 F.2d 977, 981 (11th Cir.1983), and *Guice v. Fortenberry*, 661 F.2d 496, 506–07 (5th Cir.1981) (*en banc*). Nonetheless, by importing the inexcusable neglect language from *Townsend* into their definition of "abuse of the writ," both circuits have perpetuated the inherent contradiction between the volitional conduct required under the deliberate bypass standard and the lack of intentionality implied in the term inexcusable neglect. This anomoly, created by the language in *Townsend*, should not be extended into the Rule 9(b) abuse of the writ context. Neither the legislative history of Rule 9(b) nor *Sanders*, the case which Rule 9 codifies, supports such an extension.

Other factors militate against incorporating inexcusable neglect into the standard for abuse of the writ. The first difficulty with making inexcusable neglect synonymous with abuse of the writ is its close proximity to the "not excusable" standard the Supreme Court initially proposed as the basis for dismissal of a successive petition raising grounds for relief not included in a prior application for habeas corpus relief. As discussed above, Congress explicitly rejected "not excusable" as too vague and replaced it with the "abuse of the writ" standard adopted from *Sanders*. The difference in meaning between "inexcusable neglect" and "not excusable" is slight at best. Given the near identity of the two terms, any attempt to distinguish one from the other is simply semantical legerdemain. Surely the intent of Congress cannot be

defeated by the mere transposition of words.

The notion that a petitioner abuses the writ when he inexcusably neglects to present a ground for relief in a prior application for habeas corpus relief is further refuted by *Sanders* itself. As the legislative history of Rule 9 shows, Congress directly derived the abuse of the writ standard it adopted for Rule 9 from *Sanders*. That *Sanders* contemplated something more than inexcusable neglect when it decided that full consideration of the merits of a second or successive application for collateral review of a conviction can be avoided only if it is found that the applicant abused the writ or motion remedy is made manifest by the dissent of Justice Harlan. Expressing doubts as to the rigorousness of the abuse of the writ standard adopted by the majority, Justice Harlan wrote:

> It is at least equally startling to learn that the question whether or not there has been abuse of the remedy may turn on whether the prisoner had "deliberately" withheld the ground now urged or had "deliberately" abandoned it at some earlier stage. The established concept of inexcusable neglect is apparently in the process of being entirely eliminated from the criminal law and the standard that seems to be taking its place will, I am afraid, prove wholly inadequate and in the long run wholly unsatisfactory.

373 U.S. at 29, 83 S.Ct. at 1084 (citations omitted). Thus, for Justice Harlan at least, the deliberate conduct needed to constitute abuse of the writ under *Sanders* quite clearly required a greater degree of intentionality than mere inexcusable neglect.

*Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), demonstrates that the Supreme Court has not abandoned the *Sanders* view that some showing of intentional or deliberate action is required to support a finding of writ abuse. In *Rose*, the Court held that the proper procedure for handling a "mixed" petition, *i.e.*, one raising both exhausted and unexhausted claims, is dismissal with leave to resub-

mit a petition limited to the exhausted claims. The question that sharply divided the Court was whether Rule 9(b) would bar a petitioner who elected to resubmit an amended petition and proceed with his exhausted claims from raising the previously unexhausted claims in a second or successive petition. Joined by three other justices, Justice O'Connor espoused the opinion that a prisoner who decided to proceed only with his unexhausted claims would abuse the writ within the meaning of Rule 9(b) if he later sought relief. 455 U.S. at 520–21, 102 S.Ct. at 1204. Four justices disagreed with Justice O'Connor's interpretation of Rule 9(b).[3] In their judgment, withholding of claims must be done in deliberate bad faith in order to constitute abuse of the writ under *Sanders* as codified in Rule 9(b). 455 U.S. at 535–36, 102 S.Ct. at 1212 (Brennan, J., concurring and dissenting); *see also Williams v. Holbrook*, 691 F.2d 3, 12–13 (1st Cir.1982). Because any petitioner who withheld claims for purposes of exhaustion would do so knowingly, the focus of the disagreement centered on motive rather than intent. Thus, neither *Sanders* nor the debate in *Rose* supports the conclusion that abuse of the writ can be premised on anything less than intentional conduct. Accordingly, finding no justification for the inclusion of "inexcusable neglect" into Rule 9(b) standards, this court holds that a petitioner abuses the writ within the meaning of Rule 9(b) only if, in the words of *Fay*, he "understandingly and knowingly forewent the privilege" of asserting his claims in a prior petition. *Fay*, 372 U.S. at 439, 83 S.Ct. at 849.

Having concluded that deliberate conduct is required to support a finding of writ abuse does not end the discussion. The procedural aspects of Rule 9(b) remain to be examined before the court can determine if petitioner's three new claims for habeas relief are barred as abusive of the writ.

---

**3.** Justice Stevens expressed no position on this    issue in his dissent.

■ As noted earlier, abuse of the writ is an affirmative defense that must be pleaded by the respondent or raised *sua sponte* by the court. *Robinson,* 704 F.2d at 370; *see Sockwell v. Maggio,* 709 F.2d 341 (5th Cir.1983). The operative facts for establishing the affirmative defense of writ abuse under Rule 9(b) are the existence of multiple applications for habeas corpus relief by the same petitioner challenging a single conviction, the assertion of claims in the successive petition that were not included in earlier petitions, and an allegation that failure to raise claims in earlier petitions constitutes writ abuse. *Jones v. Estelle,* 722 F.2d 159, 164 (5th Cir.1983) *(en banc),* cert. denied, —— U.S. ——, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984). Once the respondent has met its burden of pleading abuse of the writ, the burden shifts to the petitioner to explain his failure to raise claims in earlier petitions. *Price,* 334 U.S. at 292, 68 S.Ct. at 1063; *Robinson,* 704 F.2d at 370. Because the risk of non-persuasion rests with petitioner, respondents need not present affirmative evidence that petitioner deliberately withheld claims. *See Woodard v. Hutchins,* 464 U.S. 377, 104 S.Ct. 752, 753 n. 3, 78 L.Ed.2d 541 (1984). Thus, if it appears that petitioner was aware of all relevant facts and knew or should have known of their legal significance at the time he filed his initial application for habeas corpus relief, any subsequent petition raising additional claims will be subject to dismissal for abuse of the writ under Rule 9 if petitioner, once given a reasonable opportunity, does not come forward with some justifiable reason for not asserting his claims earlier.[4] *McLaughlin,* 726 F.2d at 11 (1st Cir.1984).

Three of the four grounds for habeas corpus relief Cyburt raises in his petition were not alleged in his initial application. The court now turns to the reasons Cyburt gives for failing to raise these claims earlier to determine if he has carried his burden of proving that he has not abused the writ.

Cyburt's first ground for relief is based on *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Cyburt avers that when he appeared in court for trial, the judge had before him a pretrial competency report which included admissions of guilt made during the competency examination. Because Cyburt allegedly was not given any *"Miranda* -type" warnings prior to his psychiatric interview, he contends that his conviction was obtained in violation of his Fifth Amendment privilege against self-incrimination. Cyburt justifies his failure to assert this claim in his prior petition on the grounds that it is based on new law, *i.e., Smith. Smith* was not decided until almost four years after Cyburt filed his first petition for a writ of habeas corpus.

■ Generally, an intervening change of law is sufficient grounds to justify the filing of a successive habeas corpus petition. *Sockwell,* 709 F.2d at 344 (5th Cir.1983); *see Smith v. Yeager,* 393 U.S. 122, 89 S.Ct. 277, 21 L.Ed.2d 246 (1968). What constitutes an intervening change of law, however, is not always an easy question to answer. For example, in *Moore v. Zant,* 734 F.2d 585 (11th Cir.1984), the Eleventh Circuit rejected the argument that *Smith,* the case Cyburt relies on here, announced a legal theory so novel as to amount to a change in law excusing a petitioner from presenting his claim in a prior petition. *Id.* at 595. In reaching its decision, the court adopted the analysis the Supreme Court applied in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), to determine if a change in law was sufficient "cause" to justify a state procedural default which would otherwise operate as a waiver of the right to pursue the defaulted claim in federal habeas corpus proceedings. Under this analysis, counsel is charged with anticipating a case that

---

4. The Fifth Circuit adopted the preponderance of the evidence standard as the burden of proof required for a petitioner to show he has not engaged in abusive conduct. *Jones,* 722 F.2d at 164; *see also Moore v. Zant,* 734 F.2d 585, 589 (11th Cir.1984). While this court does not quarrel with the propriety of the preponderance of the evidence standard, it notes with curiosity the origin of the Fifth Circuit's holding. The *en banc Jones* court purportedly derived the standard from *Price, supra,* but the "by a preponderance of the evidence" the court quotes (or misquotes) from *Price* does not appear in the original text.

merely extends existing law by applying established constitutional principles to new factual situations. But Cyburt had no assistance from counsel throughout the course of his collateral review proceedings in federal court. In contrast, counsel represented the petitioner in *Moore* both at trial and in his two habeas corpus actions. This fact was crucial to the decision in *Moore. Id.* at 593. It would be inequitable to expect a layman such as Cyburt to reasonably foresee *Smith.* Accordingly, without expressing any opinion as to *Moore's* extension of *Engle* into the Rule 9(b) context, this court finds that Cyburt did not knowingly abuse the writ by failing to assert his *Smith* -based claim in his first petition.

Reviewing Cyburt's claim on the merits, his objection to the psychiatrist's failure to give him *Miranda* warnings prior to his competency hearing does not raise an issue of constitutional magnitude. The facts in this case are readily distinguishable from those that compelled the decision in *Smith.*

*Smith* involved a capital trial for murder. The trial court, without notice to defendant's counsel, appointed a psychiatrist to examine defendant and to determine his competency. The psychiatric interview was conducted without first advising defendant of either his right to counsel or his right to remain silent. Subsequently, during the penalty phase of the bifurcated trial, the state introduced into evidence the testimony of the psychiatrist in an effort to prove one of the factual predicates required to support imposition of the death penalty. Limiting its decision to "these distinct circumstances," the court held that use of psychiatric testimony, secured without warning defendant that he could remain silent and that the results of the interview could be used against him, violated his Fifth Amendment privilege against self-incrimination. *Id.,* 451 U.S. at 466, 469 n. 13, 101 S.Ct. at 1876 n. 13.

■ The facts here differ significantly from those the court confronted in *Smith.* First, Cyburt was not charged with a capital offense. Some courts have suggested that the holding in *Smith* with respect to

the Fifth Amendment issue applies only to bifurcated capital proceedings. *Baumann v. United States,* 692 F.2d 565, 576 (2d Cir.1982); *see also United States v. Jones,* 640 F.2d 284, 288 (10th Cir.1981). But whether *Smith* should be so narrowly interpreted is a question that this court need not address as other more critical facts undermine Cyburt's reliance on *Smith* as support for his claim. Most importantly, the state never introduced into evidence the allegedly inculpatory statements Cyburt made during the course of his competency examination. Unlike *Smith,* Cyburt pled guilty to the charges against him and received the 15-to-40 year sentence prosecutors had promised to recommend in exchange for his plea. As Cyburt's incriminating statements to the psychiatrist were not used to his detriment at any stage of his criminal proceedings, he cannot complain that his conviction was obtained in violation of his Fifth Amendment right not to give testimony against himself.

In his second ground for relief, Cyburt seeks to compel the state to comply with the terms of his plea agreement. He alleges that the state violated the terms of the plea agreement by not providing him with immediate psychiatric treatment and an expedited transfer to state custody to facilitate such treatment. Cyburt attributes his failure to raise this claim in the earlier proceeding to his lack of legal sophistication. He maintains that he presented this claim to both the trial and appellate court in his state post-conviction action, but that neither court addressed the matter. He explains that he did not raise the claim in his initial petition because of his mistaken belief that the state court must first rule on an issue before its presentation to federal court.

■ Determination of whether a successive petition for a writ of habeas corpus constitutes an abuse of the writ is, like the habeas corpus remedy itself, governed by principles of equity. Balancing the need to protect the courts from those who would misuse or subvert the judicial process with needless piecemeal litigation against preservation of the exalted role of habeas corpus as guardian against unjust imprison-

ment, courts generally are solicitous toward petitions filed by uncounselled inmates. *See Price*, 334 U.S. at 292, 68 S.Ct. at 1063; *Robinson*, 704 F.2d at 372. Recognizing that a pro se prisoner "should not be penalized because his inexperience in jurisprudence left him unaware of claims he had not considered at the time of his first application for habeas corpus," *Haley v. Estelle*, 632 F.2d 1273, 1276 (5th Cir. 1980), courts are reluctant to invoke Rule 9(b) to ban consideration of claims submitted by an unrepresented petitioner. *See McShane v. Estelle*, 683 F.2d 867 (5th Cir. 1982). But even a pro se inmate may be charged with abuse of the writ if he subsequently seeks relief for a claim known to him at the time he filed his first habeas corpus petition, *Mays v. Balkcom*, 631 F.2d 48, 51 (5th Cir.1980), or if his explanation, in light of the record of prior proceedings, is insufficient to meet his burden of proof as to the absence of abuse. *Jones v. Estelle*, 692 F.2d 380 (5th Cir.1982).

▮ The facts underlying Cyburt's claim, the alleged breach of the plea agreement, obviously were known to him at the time he first applied for habeas corpus relief. Likewise, he apparently knew of their legal significance as he maintains he raised the claim in his state post-conviction proceeding. Cyburt thus does not rely on legal ignorance of the claim itself as an excuse for omitting it from his prior petition. Instead, he attributes his failure to raise the claim earlier to a misunderstanding of the exhaustion requirement. The record in the prior habeas corpus proceeding, however, contravenes the rationale Cyburt proffers for his earlier oversight.

Cyburt states that "Pro se petitioner had been under the belief that state court must first rule on issue before its presentation to federal court." But answers he gave to questions contained in the petition form he completed for his first habeas corpus action reveal that he has only recently acquired a hesitancy to raise in federal court issues not previously brought before the state court. Question 13 on the habeas corpus petition form asks: "If any of the grounds listed in [the prior sections] were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them." His response to the question indicates that one of his claims was never presented to the state court and that another, although presented in his post-conviction petition, was never ruled on by the court. Thus, it appears that one of the grounds for relief asserted in the first petition was in almost exactly the same procedural posture as Cyburt's attack upon the plea agreement in this action. The issue had been raised in the post-conviction petition but not addressed by the state court. That Cyburt saw fit to raise in his first habeas corpus petition grounds that were not ruled upon by the state court renders implausible and unacceptable his excuse for not asserting at that time his claim that prosecutors reneged on the plea agreement. Accordingly, finding that Cyburt has not met his burden of proving that he did not deliberately withhold this claim from his prior proceeding, the court concludes that Rule 9(b) bars its consideration here.[5]

A finding of writ abuse also bars consideration of Cyburt's final claim that vacation of his convictions on two of the counts charged in the indictment should have reduced his aggregate sentence. Cyburt seeks to justify omission of this claim from the earlier proceeding on the excuse that he thought the court would review it because it was "plain on its face." Cyburt can hardly claim legal ignorance of this claim given his admission of its facial significance. Moreover, Cyburt's assertion that he thought the court would review the issue on its own is untenable in light of his prior exposure to the judicial system and the form application's repeated admonitions that petitioner must include all grounds for

---

5. Were the court to consider Cyburt's claim on the merits, it would dismiss it as frivolous. As disclosed by facts set out in the Amended Petition for Post-Conviction Relief filed of record in 77 C 3715, Rec. Doc. 13, Cyburt's own action prevented complete compliance with the plea agreement. Cyburt's transfer to state custody for psychiatric treatment was delayed a week because Cyburt slit his wrists in a suicide attempt the day after he entered his guilty plea.

relief in his petition. In any event, the only thing facially apparent about Cyburt's claim is its utter lack of merit. Vacation of the two sentences does not affect the length of time Cyburt ultimately is to serve because they were lesser than and concurrent to the 15-to-40 year term imposed on the rape charge.

Concluding that Cyburt is not entitled to the relief he seeks, the court denies his motion for appointment of counsel and dismisses the petition for a writ of habeas corpus.